IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| SARA OLVERA, ABNER JOHNSON, LILLIAN D. WITT, MARION D. WILLIAMS, and PHYLLIS WILLIAMS, individually and as representatives of a proposed class of others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Civil Action No.<br>:<br>:<br>: |

## COMPLAINT

Come now Plaintiffs, by and through their undersigned counsel, and allege as follows:

**I.   Nature of the Case**

1.      Plaintiffs bring this action for personal injuries suffered as a result of a train derailment and the release of chlorine on or about January 6, 2005.

2.      Plaintiffs bring this action for monetary damages against Defendant Norfolk Southern Railway Company for negligent act(s) including, but not limited to, the operation of the train(s) involved, the operation of track(s) in transferring (switching) two trains to one track in a manner that could result in a collision, and / or failing to switch the track in such a manner that would not result in a collision.

**II.   Parties**

3.      Plaintiff Sara Olvera is a resident of Aiken County, South Carolina.  Ms. Olvera was at her home at 109 Aiken Road in Graniteville at the time of the time of the derailment and

chlorine release. Ms. Olvera received medical treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine from the derailment and chlorine release.

4.     Plaintiff Abner Johnson is a resident of Aiken County, South Carolina. Mr. Johnson was at work at Avondale Mills in Graniteville at the time of the time of the derailment and chlorine release. Mr. Johnson received medical treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine from the derailment and chlorine release.

5.     Plaintiff Lillian D. Witt is a resident of Aiken County, South Carolina. Ms. Witt was at her home at 145 Howlandville Road in Warrenville at the time of the time of the derailment and chlorine release. Ms. Witt received medical treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine from the derailment and chlorine release.

6.     Plaintiff, Marion D. Williams, is a resident of Aiken County, South Carolina. Mr. Williams was at work at Avondale Mills in Graniteville at the time of the derailment and chlorine release. Mr. Williams received medical treatment from a licensed physician or licensed health care provider after February 1, 2005 for an objective manifest physical injury caused by chlorine from the derailment and chlorine release.

7.     Plaintiff Phyllis Williams is a resident of Aiken County, South Carolina. Ms. Williams was at work at Avondale Mills in Graniteville at the time of the time of the derailment and chlorine release. Ms. Williams was hospitalized for two days and received medical treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine from the derailment and chlorine release.

8. Defendant Norfolk Southern Railway Company ("NSRC") is a company organized under the laws of Virginia with its principal place of business in Virginia. At all times relevant hereto NSRC was authorized and empowered to conduct business in South Carolina as a common carrier.

### III. Jurisdiction and Venue

9. This Court has jurisdiction over Plaintiffs' claims against Defendant NSRC pursuant to 28 U.S.C. § 1332, as diversity of citizenship exists between the Plaintiffs and Defendant NSRC and the amount in controversy exceeds $75,000.00.

10. Venue is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district and as Defendant NSRC is subject to personal jurisdiction in this judicial district.

### IV. Facts

11. On January 5, 2005, certain employees of Defendant NSRC failed to restore the mainline switch at the Avondale Mills plant located in Graniteville, South Carolina resulting in Train P 192 entering the industry spur at approximately 2:38 a.m. on January 6, 2005.

12. Train P192 was operated by employees of Defendant NSRC and was carrying hazardous materials, including chlorine.

13. After entering the industry spur, Train P 192 collided with another NSRC train (Train P 22) causing a derailment.

14. The collision and resulting derailment led to the release of chlorine which vaporized and became a gas and spread beyond the site of the collision.

15. Plaintiffs were exposed to the hazardous chlorine gas released due to the collision and the exposure to the hazardous chlorine gas resulted in injuries to Plaintiffs.

16.     The release of the hazardous chlorine gas also resulted in hundreds of persons receiving medical treatment.

V.      **Class Allegations**

17.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), plaintiffs bring this action on their own behalf and on behalf of a class defined below. For purposes of the class definition below, the following terms shall have the following meanings:

    a.      "Evacuation Zone A" means those areas within a one mile radius of the Place of Derailment in which a shelter-in-place occurred and a mandatory evacuation was ordered on January 6, 2005, and the period of mandatory evacuation extended beyond 11:59 p.m. Eastern Standard Time on January 9, 2005.

    b.      "Evacuation Zone B" means those areas outside the one mile radius from the Place of Derailment in which a shelter-in-place and/or mandatory evacuation order was issued on January 6, 2005, and the period of mandatory evacuation did not extend beyond 11:59 p.m. Eastern Standard Time on January 9, 2005.

    c.      "Incident" means the January 6, 2005 train collision, derailment, release of chlorine, emergency response, clean-up, shelter-in-place, and evacuation at Graniteville, South Carolina.

    d.      "Medical Treatment" means medical actions taken to cure, treat or remedy an objective manifested physical injury except that the term "Medical Treatment" does not include (i) any diagnostic examinations or tests, (ii) any medical or other actions taken to decontaminate the body, or any parts of the body, of a person from chlorine due to the Incident, or (iii) any medical or other actions taken to prevent exposure to chlorine or

injury and not to cure, treat or remedy an already existing objective manifested physical injury caused by exposure to chlorine.

  e. "Place of Derailment" means the junction of the NSRC spur and NSRC main line in the Right of Way of Canal Street, in the City of Graniteville, County of Aiken, State of South Carolina. US Geodetic Survey Coordinates Northing/X: 1753802.66, Easting/Y: 629994.26; Latitude, 33 degrees 33' 45.65"N, Longitude, 81 degrees 48' 31.47"W.

  f. "Time of Derailment" means 2:38 a.m. Eastern Standard Time on January 6, 2005.

  g. "Opt Out" means the process for all natural and juridical and legal persons (or, in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) and entities to exercise their right to exclude themselves from the class in accordance with Fed. R. Civ. P. 23(c)(2) and the procedures set forth in the class notice.

  h. "Opt Outs" means those natural and juridical and legal persons (or, in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) and entities included in the class who have timely and properly exercised their right to Opt Out of the class, and therefore are not class members.

  i. "Preceding Class" or "Preceding Subclass 3" means the class and / or subclass 3 as defined in the final order and judgment of Judge Seymour entered August 25, 2005 in the class action settlement captioned Curtis, et al., v. Norfolk Southern Railway Company, et al., CA No. 1:05-CV-115-MBS (D.S.C.).

  j. "Preceding Class Action Settlement" means the terms of the proposed settlement agreement ("PSA") and protocol as approved by the final order and judgment of

Judge Seymour entered August 25, 2005 in the class action settlement captioned Curtis, et al., v. Norfolk Southern Railway Company, et al., CA No. 1:05-CV-115-MBS (D.S.C.).

    k.    The class shall consist of :

All natural persons born prior to January 6, 2005 (or in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) as well as any person or entity claiming by, through, or under a class member, including any person or entity claiming a subrogation interest not related to worker's compensation for amounts paid on behalf of class members:

    Subclass 1. All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

    Subclass 2. All persons physically present in Evacuation Zone B on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider for an objective manifested physical injury caused by chlorine exposure from the Incident on or prior to February 1, 2005 and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

    Subclass 3. All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider after February 1, 2005 but before April 6, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

    Subclass 4. All persons physically present in Evacuation Zone A at any time between January 6, 2005 and January 11, 2005, whose presence was solely by reason of their responsibility as professional members of law enforcement, fire department, emergency services, and other governmental agencies responding to the Incident and who received Medical Treatment

from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

Subclass 5. All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and whose Incident-related Medical Treatment included at least one Overnight Hospitalization on or before February 1, 2005 and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

Subclass 6. All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who have exhibited objective physical symptoms that were diagnosed by a licensed physician, psychiatrist or psychologist prior to March 6, 2005 as being caused by having contemporaneously observed a closely-related person (a) being exposed to chlorine on January 6, 2005 due to the Incident and (b) the occurrence of serious personal injury or death of that closely-related person due to the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

The class (and all of the subclasses) also shall not include: (i) NSRC or any of its employees, agents, contractors, and subcontractors, including employees of NSRC's agents, contractors or subcontractors, (ii) the judge overseeing the case and the judge's immediate family, (iii) persons who at the time they settled and released their claims for personal injuries against NSRC were represented by attorneys, and whose attorneys participated in the settlement or acquiesced to the settlement with a release of such persons' personal injury claims, (iv) Opt Outs, (v) persons with claims and damages for wrongful death or related survival actions arising out of, related to, resulting from or connected in any way with the Incident and that accrued prior to the date of this Settlement; and (vi) members of subclass 3 of the Preceding Class Action Settlement.

      1.      Plaintiffs are members of the class they seek to represent.

18. The persons constituting the class are so numerous as to make it impracticable to bring them all before the Court.

19. There are substantial questions of law and fact common to the class. These common questions include, but are not limited to:

    a. Whether exposure to chlorine gas can cause injury;

    b. What the geographical area of the chlorine gas released from the derailment was;

    c. Whether the amount of chlorine gas released from the derailment was sufficient to cause injury within this geographical area;

    d. What NSRC's conduct in connection with the incident was;

    e. Whether NSRC owed Plaintiffs and class members a duty;

    f. Whether NSRC failed to exercise reasonable care in performance of this duty to Plaintiffs and class members; and

    g. Whether the breach of this duty to Plaintiffs and class members was capable of proximately causing the sort of chlorine-related injuries being claimed by Plaintiffs.

20. The claims of Plaintiffs are typical of the claims of the class. The same events and conduct which give rise to the claims and legal theories of the representative plaintiffs also give rise to those of the class. Litigation of Plaintiffs' claims will advance the interests of all class members.

21. Plaintiffs, with the assistance of their counsel, will fairly and adequately protect the interests of the class.

22. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

23. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**VI.    Cause of Action -- Negligence**

24. Plaintiffs re-allege paragraphs 1-23 as if set forth verbatim herein.

25. Defendant NSRC was responsible for and did operate the train involved in the aforementioned train crash that was transporting the chemicals that released chlorine.

26. Defendant NSRC was responsible for the actions of their employees acting in the course and scope of their duties as employees of NSRC.

27. Defendant NSRC owed a duty to Plaintiffs to operate the train involved in the aforementioned train crash in a safe manner so as not to release chlorine.

28. Defendant NSRC breached this duty to Plaintiffs.

29. Specifically, Defendant NSRC was negligent, grossly negligent, willful, wanton, and/or reckless in one or more of the following particulars with each sufficient to support the relief sought:

    a. In allowing the operation of multiple trains on the same track without an adequate system to ensure the proper alignment of all switches or adequately warn of the misalignment of switches;

    b. In failing to switch the tracks properly so that two trains would not collide;

    c. In switching the tracks in such a manner as to allow two trains to collide;

    d. In allowing the operation of multiple trains on the same track;

e. In failing to exercise the degree of care that a reasonable and prudent person would have exercised under the same and similar or similar circumstances;

f. In failing to keep a proper lookout;

g. In failing to avoid a collision with another train;

h. In failing to have its trains and engines under proper care and control;

i. In failing to apply brakes timely;

j. In failing to use reasonable precautions to insure the safety of the public in general and Plaintiffs;

k. In failing to warn the train operator(s) of a misaligned switch;

l. In failing to operate the track(s) properly;

m. In failing to design the track(s) properly;

n. In failing to maintain the track(s) properly;

o. In failing to build the tracks(s) properly;

p. In failing to design a warning system to warn an approaching train adequately when a track switch is misaligned;

q. In failing to install a warning system to adequately warn an approaching train when a track switch is misaligned;

r. In failing to utilize a method of train operation or control sufficient to avoid unexpected diversion from the mainline;

s. In failing to utilize a method of train operation or control sufficient to warn train operators in sufficient time to avert a misaligned switch hazard and unexpected diversion from the mainline;

t.  In failing to monitor and supervise its employees in an adequate manner;

u.  In retaining employees which NSRC knew or should have known in the exercise of ordinary care had a history of failing to follow operating rules and practices and one of whom had been previously dismissed for failure to properly restore a main track switch;

v.  In failing to appropriately train its employees and monitor their understanding of and compliance with operating rules and federal laws or regulations;

w.  In failing to perceive, monitor or otherwise discover the fatigued conditions of its employees and in permitting fatigued employees to perform safety critical operations;

x.  In failing to comply with applicable federal laws and regulations;

y.  In violating the South Carolina Pollution Control Act, S.C. Code §48-1-10, *et seq.*; and

z.  In such other manners that may be shown at the trial of this matter.

30. Defendant NSRC's negligence proximately caused Plaintiffs to suffer injuries and damages including, but not limited to, personal injuries, mental anguish, pain and suffering, loss of income and medical expenses.

## VII. Prayer for Relief

WHEREFORE, Plaintiffs pray unto the Court for the following relief:

A.  Certification of the class under Fed. R. Civ. P. 23(b)(3) and appointment of Plaintiffs as class representatives and their counsel as class counsel; and

B.  Entry of judgment against Defendant NSRC for:

11

1.  Actual damages in an amount to be determined by a jury;

2.  Punitive damages in an amount to be determined by a jury;

3.  The costs of this action;

4.  Attorneys fees; and

5.  All such other and further relief as the Court deems just and proper.

**VIII. Jury Demand**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted:

                                                  s/Frederick J. Jekel
Joseph F. Rice
Frederick C. Baker
Frederick J. Jekel
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9440
Co-Class Counsel

Terry E. Richardson, Jr.
J. David Butler
RICHARDSON PATRICK WESTBROOK
    & BRICKMAN, LLC
P.O. Box 1368
Barnwell, SC 29812
Telephone: (803) 541-7850
Facsimile: (803) 541-9625
Co-Class Counsel

Carl L. Solomon
GERGEL NICKLES & SOLOMON, PA
1519 Richland Street
Columbia, SC 29201
Telephone: (803) 779-8080
Facsimile: (803) 256-1816

Joseph Preston Strom, Jr.
STROM LAW FIRM, LLC
1501 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 252-4800
Facsimile: (803) 252-4801

William Mullins McLeod, Jr.
PIERCE HERN SLOAN & McLEOD, LLC
P.O. Box 22437
Charleston, SC 29413
Telephone: (843) 722-7733
Facsimile: (843) 722-7732

Dated this 22nd day of December, 2006