# EXHIBIT A TO JOINT MOTION FOR PRELIMINARY APPROVAL

**GRANITEVILLE TRAIN DERAILMENT**

**PROPOSED SETTLEMENT AGREEMENT**

**RELATED TO CLASS CLAIMS FOR**

**PERSONAL INJURIES**

# TABLE OF CONTENTS

1.  DEFINITIONS ................................................................................................................2

    1.1   "Class Settlement Claims Office" ...........................................................2
    1.2   "Claims Processing Procedure Protocol" ................................................3
    1.3   "Class" ......................................................................................................3
    1.4   "Class Members" ......................................................................................4
    1.5   "Court" ......................................................................................................5
    1.6   "Effective Date" .......................................................................................5
    1.7   "Evacuation Zones" ..................................................................................5
    1.8   "Fairness Hearing" ...................................................................................5
    1.9   "Final Order and Judgment" .....................................................................5
    1.10  "Guardian Ad Litem" ...............................................................................5
    1.11  "Incident" .................................................................................................5
    1.12  "Loss of Consortium" ...............................................................................6
    1.13  "Medical Treatment" ................................................................................6
    1.14  "Notice" ....................................................................................................6
    1.15  "Opt Out" ..................................................................................................6
    1.16  "Opt Outs" ................................................................................................6
    1.17  "Place of Derailment" ..............................................................................6
    1.18  "Plaintiffs" ................................................................................................6
    1.19  "Preliminary Approval and Class Certification Order" ...........................6
    1.20  "Proof of Claim Form" .............................................................................6
    1.21  "Released Claim" ......................................................................................6
    1.22  "Overnight Hospitalization" .....................................................................7
    1.23  "Preceding Class" or "Preceding Subclass 3" ........................................7
    1.24  "Preceding Class Action Settlement" ......................................................7
    1.25  "Qualifying Hospitalization" ....................................................................7
    1.26  "Released Entities" ...................................................................................8
    1.27  "Settlement Accounting" ..........................................................................8
    1.28  "Settlement Costs" ....................................................................................8
    1.29  "Special Master" .......................................................................................9
    1.30  "Time of Derailment" ...............................................................................9

2.  SETTLEMENT ...........................................................................................................9

    2.1   Settlement .................................................................................................9
    2.2   Level 2 Compensation Matrix for Qualifying Subclass 5 Members  and
          Qualifying Subclass 6 Members Only ...................................................11
    2.3   Payment of Compensation ......................................................................12

3.  PRELIMINARY APPROVAL BY THE COURT AND CLASS CERTIFICATION .....13

    3.1   Obtaining Approval and Certification .....................................................13
    3.2   Entry of Approval and Certification ........................................................13
    3.3   Limitation of Approval and Certification ................................................14

3.4    Non-Approval and Non-Certification ............................................................... 14

4.    NOTICE AND FAIRNESS HEARING ...................................................................... 14

4.1    Form and Publication of Notice ...................................................................... 14
4.2    Courtesy Copies to Known Counsel ............................................................... 14
4.3    Proof of Claim Forms ..................................................................................... 15
4.4    Proof of Claim Deadline ................................................................................. 15
4.5    Opt Outs from the Settlement ......................................................................... 15
4.6    Objections to the Settlement ........................................................................... 15
4.7    Fairness Hearing .............................................................................................. 15
4.8    Failure to Object or Opt Out ........................................................................... 15
4.9    Non-Approval and Non-Certification .............................................................. 16

5.    RELEASE, ASSIGNMENT AND INDEMNIFICATION ......................................... 16

5.1    Release and Covenant Not to Sue ................................................................... 16
5.2    Assignment ...................................................................................................... 16
5.3    Indemnity ......................................................................................................... 16
5.4    Taxes ................................................................................................................ 16

6.    NO ADMISSION OF LIABILITY ............................................................................. 16

7.    REPRESENTATIONS AND WARRANTIES ............................................................ 17

7.1    Authority of Class Counsel ............................................................................. 17
7.2    Authority of NSRC .......................................................................................... 17
7.3    Necessary Steps ............................................................................................... 17
7.4    Liens, Assignments, Subrogation, etc. ............................................................ 17

8.    FINAL ORDER AND JUDGMENT, DISMISSAL WITH PREJUDICE, AND
       CONTINUING JURISDICTION ................................................................................ 17

9.    EXCLUSIVE REMEDY AND INJUNCTION ........................................................... 18

9.1    Exclusive Remedy ........................................................................................... 18
9.2    Injunction ......................................................................................................... 18

10.    ROLE OF CLASS SETTLEMENT CLAIMS OFFICE, NOTICE AGENT, AND
        SPECIAL MASTER ................................................................................................... 19

10.1    Class Settlement Claims Office ..................................................................... 19
10.2    Duties of the Class Settlement Claims Office ............................................... 19
10.3    Class Counsel and their Staff at the Class Settlement Claims Office ........... 19
10.4    Role of Class Counsel and their Staff at the Class Settlement Claims Office ...... 19
10.5    Items For Which Class Counsel Shall Not Be Responsible .......................... 20
10.6    Notice Agent .................................................................................................. 20
10.7    Duties of the Special Master ......................................................................... 21

|       | 10.8  | Appeals of Settlement Relief................................................................................21 |

| 11.   | CLAIMS PROCESSING AND EVALUATION .........................................................21 |

|       | 11.1  | Claim Evaluation ................................................................................21 |
|       | 11.2  | Set-Offs/Credits..................................................................................22 |
|       | 11.3  | Appeals to Court..................................................................................23 |
|       | 11.4  | Non-Timely Filing of Proof of Claim Form.......................................23 |
|       | 11.5  | Claims of Minors/Claimants Who Lack Capacity...............................23 |
|       | 11.6  | Subrogation and Similar Claims.........................................................23 |
|       | 11.7  | Accelerated Implementation Option ...................................................23 |

| 12.   | SETTLEMENT COSTS ............................................................................................24 |

| 13.   | CLASS COUNSEL'S FEES.....................................................................................24 |

|       | 13.1  | Class Counsel Base Fee ......................................................................24 |
|       | 13.2  | Limitations ..........................................................................................26 |

| 14.   | RIGHTS OF WITHDRAWAL ................................................................................27 |

| 15.   | CONSEQUENCES OF TERMINATION.................................................................27 |

| 16.   | OTHER OBLIGATIONS OF THE PARTIES ..........................................................28 |

|       | 16.1  | Best Efforts.........................................................................................28 |
|       | 16.2  | Entire Agreement................................................................................28 |
|       | 16.3  | Amendment.........................................................................................28 |
|       | 16.4  | Notices ................................................................................................28 |
|       | 16.5  | Construction .......................................................................................29 |
|       | 16.6  | Severability.........................................................................................29 |
|       | 16.7  | Governing Law....................................................................................29 |
|       | 16.8  | Survival ..............................................................................................29 |
|       | 16.9  | Further Assurances .............................................................................29 |
|       | 16.10 | Counterparts ........................................................................................29 |

## PREAMBLE

Sara Olvera, Abner Johnson, Lillian D. Witt, Marion Williams, and Phyllis Williams (the "Plaintiffs"), on behalf of themselves and as Representatives of members of the Class (as defined in Section 1.3 below), by and through undersigned class counsel ("Class Counsel") and the Norfolk Southern Railway Company and its successors and assigns ("NSRC") (Plaintiffs, Class Counsel and NSRC, collectively the "Parties," and each a "Party"), hereby enter into this Proposed Settlement Agreement, together with its Exhibits (the "PSA," or the "Agreement" or the "Settlement"), as of the date hereof, providing for settlement with the Class pursuant to the terms and conditions set forth herein below, subject to the approval of the Court.

## RECITALS

WHEREAS, on January 6, 2005, there was a train collision and derailment involving a NSRC train at Graniteville, South Carolina and a subsequent release of chlorine, emergency response, clean-up, and evacuation allegedly causing certain personal injuries;

WHEREAS, NSRC and its agents provided assistance, including economic payments, to persons in response to their losses, expenses, and claims due to the derailment and the subsequent release of chlorine;

WHEREAS, a lawsuit was filed against NSRC, which is captioned as In re Graniteville Train Derailment − Sara Olvera, Abner Johnson, Lillian D. Witt, Marion Williams, and Phyllis Williams v. Norfolk Southern Railway Company, (1:6CV3597) in the United States District Court for the District of South Carolina (this "Case").

WHEREAS, this Case was filed on behalf of the Plaintiffs and on behalf of others similarly situated seeking recovery of personal injury damages and losses as a result of personal and bodily injuries allegedly caused by exposure to chlorine from the derailment and release of chlorine;

WHEREAS, NSRC has asserted and continues to assert numerous defenses to the claims of Plaintiffs' or other members of the putative Class;

WHEREAS, the NSRC settled numerous claims relating to property damages, evacuation-related expenses, and minor personal injuries in a separate class action settlement approved by the Court on August 25, 2005;

WHEREAS, NSRC is desirous of settling all of the claims of Plaintiffs and those similarly situated relating to personal injuries, loss of consortium, and other damages allegedly as a result of exposure to chlorine from the derailment and release of chlorine;

WHEREAS, the Plaintiffs and Class Counsel have conducted a thorough examination of the law and investigation of facts, including extensive discovery in both

federal and state actions relating to the matter set forth in this and other cases related to the derailment;

WHEREAS, Class Counsel and NSRC have engaged in extensive, arms-length negotiations over a period of over one year regarding the issues presented in this litigation and the possible terms of settlement of the claims relating to personal injuries, loss of consortium, and other damages resulting from the January 6, 2005 train collision and release of chlorine at Graniteville, South Carolina;

WHEREAS, after analyzing the relevant facts and applicable law, taking into account the burdens, risks, uncertainties, time, and expense of litigation, as well as the merits of the terms and procedures for a fair, cost-effective and a sure method of resolving certain of the claims of the putative Class under this Agreement, the Plaintiffs' undersigned Class Counsel and NSRC have concluded that the settlement set forth in this PSA is fair, reasonable, adequate and in the best interests of the proposed Class;

WHEREAS, NSRC has concluded that resolving the claims settled under the terms of this Agreement is desirable to reduce the time, risk and expense of defending multiple claims and multiple party litigation, and to resolve finally and completely the personal injury, loss of consortium, and emotional distress claims and damages of those Class Members (as defined in Section 1.3 below) who have incurred such injuries as set forth herein;

WHEREAS, all members of the proposed Class will have the right to exclude themselves from the Class pursuant to notice procedures approved by the Court and the applicable law and as provided in this PSA; and

NOW, THEREFORE, Plaintiffs, Class Counsel, and NSRC stipulate and agree (subject to Court approval) that all Class Members' (as defined in Section 1.3 below) claims as such claims are more fully described and defined below arising from, related to, or in any way connected with the Incident (as defined below) against NSRC and/or the Released Entities shall be finally settled subject to the terms and conditions set forth herein and subject to the Court's approval of the Settlement under Fed.R.Civ.P. 23(e).

## 1. DEFINITIONS.

As used in this PSA, and in addition to the definitions set forth in the preamble and recitals above, capitalized terms shall have the following definitions and meanings or such definitions and meanings as are accorded to them elsewhere in this PSA. Terms used in the singular shall be deemed to include the plural and vice versa; the term "person" shall include, as appropriate, legal entities as well as natural persons.

1.1    "Class Settlement Claims Office" shall have the meaning ascribed in Section 10.1.

1.2     "Claims Processing Procedure Protocol" means the protocol attached hereto as Exhibit A.

1.3     "Class" shall consist of all natural persons born prior to January 6, 2005 (or in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) as well as any person or entity claiming by, through, or under a Class Member (as defined), including any person or entity claiming a subrogation interest not related to worker's compensation for amounts paid on behalf of Class Members, but excluding those persons as set forth in Section 1.3.7, below.

The Class is comprised of the following Subclasses, which are mutually exclusive of each other. If a definition of more than one Subclass among the Subclasses 1-5 describes a single person, that person shall be a member of the Subclass for which the person will receive a larger award under this Settlement. If a person is a member of Subclass 6, the person will not be a member of any other Subclass:

1.3.1     **"Subclass 1"**.     All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

1.3.2     **"Subclass 2"**.     All persons physically present in Evacuation Zone B on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider for an objective manifested physical injury caused by chlorine exposure from the Incident on or prior to February 1, 2005 and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

1.3.3     **"Subclass 3"**.     All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider after February 1, 2005 but before April 6, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

1.3.4     **"Subclass 4"**.     All persons physically present in Evacuation Zone A at any time between January 6, 2005 and January 11, 2005, whose presence was solely by reason of their responsibility as professional members of law enforcement, fire department, emergency services, and other governmental agencies

responding to the Incident and who received Medical Treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

       1.3.5    **"Subclass 5"**.   All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and whose Incident-related Medical Treatment included at least one Overnight Hospitalization on or before February 1, 2005 and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

       1.3.6    **"Subclass 6"**.   All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who have exhibited objective physical symptoms that were diagnosed by a licensed physician, psychiatrist or psychologist prior to March 6, 2005 as being caused by having contemporaneously observed a closely-related person (a) being exposed to chlorine on January 6, 2005 due to the Incident and (b) the occurrence of serious personal injury or death of that closely-related person due to the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

       1.3.7    **Other Exclusions From Class and All Subclasses**. The Class (and all of the subclasses) also shall not include: (i) NSRC or any of its employees, agents, contractors, and subcontractors, including employees of NSRC's agents, contractors or subcontractors, (ii) the judge overseeing the case and the judge's immediate family, (iii) persons who at the time they settled and released their claims for personal injuries against NSRC were represented by attorneys, and whose attorneys participated in the settlement or acquiesced to the settlement with a release of such persons' personal injury claims, (iv) Opt Outs (as defined), (v) persons with claims and damages for wrongful death or related survival actions arising out of, related to, resulting from or connected in any way with the Incident and that accrued prior to the date of this Settlement; and (vi) members of subclass 3 of the Preceding Class Action Settlement.

       1.4    "Class Members" means all natural and juridical and legal persons (or, in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) in the Class who do not Opt Out (as defined below) in accordance with Fed.R.Civ.P. 23(c)(2) and the procedures set forth in the Notice, including any lawful spouse of a class member existing at the Time of Derailment

whether or not said spouse was physically present in an Evacuation Zone for purposes of loss of consortium and other derivative claims recognized under South Carolina law.

   1.5 "Court" means the United States District Court for the District of South Carolina.

   1.6 "Effective Date" means the day following the entry by the Court of the Final Order and Judgment: (i) affirming certification of the Class; (ii) finding the PSA to be fair, adequate and reasonable; (iii) finding that the Notice to the Class of the PSA was fair, adequate and reasonable; (iv) resolving any and all objections to the fairness and reasonableness of the PSA, if any; and (v) dismissing the Class Members' Released Claims with prejudice against Released Entities with each Party to bear its own costs, except as otherwise provided herein and the expiration of the deadline for appealing the Final Order and Judgment if no appeal is perfected or sought; or the day following (i) the date all appellate courts with jurisdiction affirm the Final Judgment and Order, or (ii) such date as the Parties otherwise agree to in writing.

   1.7 "Evacuation Zones" means Evacuation Zone A (as defined below), together with Evacuation Zone B (as defined below).

   1.7.1 "Evacuation Zone A" shall mean those areas within a one mile radius of the Place of Derailment in which a shelter-in-place occurred and a mandatory evacuation was ordered on January 6, 2005, and the period of mandatory evacuation extended beyond 11:59 p.m. Eastern Standard Time on January 9, 2005 and are those areas designated as Evacuation Zone A on the map attached as Exhibit B.

   1.7.2 "Evacuation Zone B" shall mean those areas outside the one mile radius from the Place of Derailment in which a shelter-in-place and/or mandatory evacuation order was issued on January 6, 2005, and the period of mandatory evacuation did not extend beyond 11:59 p.m. Eastern Standard Time on January 9, 2005 and are those areas designated as Evacuation Zone B on the map attached as Exhibit B.

   1.8 "Fairness Hearing" shall have the meaning ascribed in Section 4.7.

   1.9 "Final Order and Judgment" means an order entered by the Court finally approving the settlement set forth in this PSA under Fed.R.Civ.P. 23(e), confirming certification of the Class, and making such other findings and determinations as the Court deems necessary and appropriate to approve the settlement and terms of this PSA and to dismiss with prejudice the Released Claims (as defined below) by any and all Class Members against NSRC and any and all Released Entities (as defined below).

   1.10 "Guardian Ad Litem" will be the person nominated by the agreement of the Parties and approved by the Court to examine the settlement and make a recommendation to the Court regarding its fairness to minors and incompetents.

   1.11 "Incident" means the January 6, 2005 train collision, derailment, release of chlorine, emergency response, clean-up, shelter-in-place, and evacuation at Graniteville, South Carolina.

1.12    "Loss of Consortium" shall include any and all derivative claims available to lawful spouses under South Carolina law, including but not limited to those referred to as loss of consortium, loss of society and companionship, or loss of services.

1.13    "Medical Treatment" shall mean medical actions taken to cure, treat or remedy an objective manifested physical injury except that the term "Medical Treatment" does not include (i) any diagnostic examinations or tests, (ii) any medical or other actions taken to decontaminate the body, or any parts of the body, of a person from chlorine due to the Incident, or (iii) any medical or other actions taken to prevent exposure to chlorine or injury and not to cure, treat or remedy an already existing objective manifested physical injury caused by exposure to chlorine.

1.14    "Notice" shall have the meaning ascribed in Section 4.1.

1.15    "Opt Out" shall mean the process for all natural and juridical and legal persons (or, in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) and entities to exercise their right to exclude themselves from the Class in accordance with Fed.R.Civ.P. 23(c)(2) and the procedures set forth in the Notice.

1.16    "Opt Outs" shall mean those natural and juridical and legal persons (or, in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) and entities included in the Class who have timely and properly exercised their right to Opt Out of the Class, and therefore are not Class Members.

1.17    "Place of Derailment" shall mean the junction of the NSRC spur and NSRC main line in the Right of Way of Canal Street, in the City of Graniteville, County of Aiken, State of South Carolina. US Geodetic Survey Coordinates Northing/X: 1753802.66, Easting/Y: 629994.26; Latitude, 33 degrees 33' 45.65"N, Longitude, 81 degrees 48' 31.47"W.

1.18    "Plaintiffs" shall have the meaning provided in the preamble of this Agreement.

1.19    "Preliminary Approval and Class Certification Order" means an order entered by the Court, preliminarily approving the settlement and certifying the Class, substantially in the form of Exhibit C.

1.20    "Proof of Claim Form" means the document(s), substantially in the form of Exhibit D, which is submitted to the Class Settlement Claims Office by Class Members for settlement of their claims pursuant to this PSA.

1.21    "Released Claim" means any and all claims whatsoever, as described below, by a Class Member, their successors, assigns, heirs, or beneficiaries, any natural, legal or juridical person or entity entitled to assert any claim on behalf of any Class Member, and any person or entity who or which derives or obtains any right from or through any Class Member, against any of the Released Entities under any legal or

equitable theory, or body of law, whatsoever, including but not limited to, negligence, strict liability, *res ipsa loquitur*, negligence per se, liability for ultra-hazardous activities or conduct, absolute liability, liability for any wanton or reckless conduct, liability for intentional or deliberate acts, liability that is derivative or vicarious arising out of the conduct or fault of others for which the Released Entities may be legally responsible, whether statutory, regulatory, or case law, whether federal, state, or local, arising out of, related to, or connected in any way with the Incident and arising from alleged personal injuries due to chlorine and other qualifying Incident-related impairments, including for punitive damages, emotional distress, and loss of consortium, except as follows:

1.21.1    Avondale Employees.  For Class Members who were employees of Avondale Mills in Graniteville, South Carolina on January 6, 2005, and without prejudice to NSRC's position that no such cognizable claim exists under South Carolina law, the release for such Avondale employee members of the class will not include claims for damages arising from the announced closure of Avondale Mills in Graniteville, South Carolina.

1.21.2    Preceding Class Action Claims.  For Class Members who opted-out of Subclass 1 and Subclass 2 of the Preceding Class Action Settlement, the Class release for such Class Members of this Class will not include claims covered by Subclass 1 and Subclass 2 of the Preceding Class Action Settlement unless relief for such claims is covered by this Settlement (e.g., lost wages).

1.22    "Overnight Hospitalization" means that the person was admitted to the hospital for in-patient care and Medical Treatment and the period of admission included at least one occurrence of 12:00 a.m. Eastern Standard Time.

1.23    "Preceding Class" or "Preceding Subclass 3" means the Class and/or Subclass 3 as defined in the Final Order and Judgment of Judge Seymour entered August 25, 2005 in the class action settlement captioned Curtis, et al., v. Norfolk Southern Railway Company, et al., CA No. 1:05-CV-115-MBS (D.S.C.)

1.24    "Preceding Class Action Settlement" means the terms of the Proposed Settlement Agreement ("PSA") and Protocol as approved by the Final Order and Judgment of Judge Seymour entered August 25, 2005 in the class action settlement captioned Curtis, et al., v. Norfolk Southern Railway Company, et al., CA No. 1:05-CV-115-MBS (D.S.C.)

1.25    "Qualifying Hospitalization" means the admission of a Subclass 5 member to a hospital for in-patient Medical Treatment for objective manifested physical injuries caused by exposure to chlorine resulting from the Incident and the duration of the admission as an in-patient in the hospital includes at least one occurrence of 12:00 a.m. Eastern Time.  The receipt of Medical Treatment at, in, or through an emergency room or emergency department at a hospital or otherwise as an out-patient shall not be a Qualifying Hospitalization regardless of duration and regardless of whether such treatment included an occurrence of 12:00 a.m. Eastern Time.

1.26    "Released Entities" means any and all of the following: (i) Norfolk Southern Railway Company, Norfolk Southern Corporation, Olin Corporation, Rhodia, Inc., Union Tank Car Company, General American Transportation Corporation, a/k/a GATX, Sunbelt Chlor/Alkali Partnership, Poly One, Trinity Industries, Inc., ACF Industries, Inc., Gulbrandsen Manufacturing Co., Jones Chemicals, Inc.; (ii) any other manufacturers, owners, lessors, lessees, and consignees of the rail cars and products involved in the Incident; (iii) the manufacturers and installers of the rails, switches, bolts, and any other material used for the rail track or other railroad equipment at Graniteville, South Carolina; (iv) the Association of American Railroads; (v) Benjimin Aiken, Mike Ford, Jimmy Ray Thornton, William Wright, the estate of Christopher Seeling, A.D. Bryson, C.J. Veal, and R.L. Capps; (vi) any persons, business entities and agencies that assisted in or supported the emergency response and clean-up activities within the Evacuation Zones during the Incident, including the activities of private, public, and governmental agencies, entities and authorities, whether federal, state, county or local, their employees, officers, agents, members, and volunteers, provided that workers' compensation, contractual, or employee benefit claims against said persons, business entities, and agencies are not hereby released; (vii) Avondale Mills, provided that workers' compensation, contractual, or employee benefit claims against Avondale Mills are not hereby released; (viii) owners, lessors, and lessees of any other real property located at the site of the Incident, and (ix) to the same extent as if expressly named herein, the respective parents, subsidiaries and affiliated companies of those released entities identified in (i) through (ix) of this paragraph, their leased and operated lines, and all other persons, firms and corporations, all of the respective predecessors, successors, assignees, lessors, officers, directors, agents, contractors, subcontractors, attorneys, insurers, and employees of the Released Entities identified in (i) through (ix) of this paragraph, past and present, as well as their heirs and legal representatives.

1.27    "Settlement Accounting" means the system established by NSRC according to the terms of this Agreement, by which a full and accurate accounting may be made to the Court of all Settlement Costs paid as provided by the terms of the PSA and pursuant to Order of the Court.

1.28    "Settlement Costs" means all settlement payments made and relief granted to all qualifying Class Members under the settlement and all costs, expenses and fees subject to Court approval and reasonably incurred in: (i) preparing and disseminating notice of, and information pertaining to the settlement; (ii) creating and maintaining the Settlement Accounting necessary to provide a full and accurate accounting of the funds paid pursuant to the settlement; (iii) funding the day-to-day operations and functions of the Class Settlement Claims Office and Special Master pertaining to the settlement, including establishment of, and staffing for, the Class Settlement Claims Office; (iv) compensating the Special Master in a reasonable manner as approved by the Court; (v) paying the reasonable fees and costs of the Guardian Ad Litem as approved by the Court for the review and approval of the Settlement with minors and incompetents; and (vi) compensating the employees of the Class Settlement Claims Office for services pertaining to the settlement, including but not limited to, reviewing and analyzing the claims of Class Members and providing Claim Response Reports to Class Members in connection with the review and analysis of claims. However, Settlement Costs shall not

include any compensation of Class Counsel or their staff for staffing the Class Settlement Claims Office pursuant to Sections 10.3 and 10.4 below or costs incurred by Class Members, private counsel, other counsel or experts retained by members of the Class or Class Counsel, or Class Counsel in connection with the preparation, submission, and prosecution of a Class Member's claim, *e.g.*, costs associated with obtaining supporting evidence or documentation for a Class Member's claim such as referred to in Section 10.4(b)

   1.29 "Special Master" Subject to Court approval, it is agreed by NSRC and Class Counsel that the Honorable Victor A. Rawl shall be the person designated by order of the Court and shall perform the functions of the Special Master as set forth in the PSA and in the Claims Processing Procedure Protocol.

   1.30 "Time of Derailment" means 2:38 a.m. Eastern Standard Time on January 6, 2005.

## 2. SETTLEMENT

   2.1 Settlement. Plaintiffs, by and through Class Counsel, agree with NSRC that NSRC, in consideration for the release of the Released Entities and the assignment and indemnification described in Section 5 below and subject to the terms of this Agreement, including the terms and procedures set forth in the Claims Processing Procedure Protocol, will:

   (a) to the extent not already paid by NSRC, provide to all Class Members Incident-related medical expenses incurred prior to the date of this settlement shown by the Class Member to have been (1) paid and (2) medically necessary as a result of their Incident-related personal injuries for which the Class Member is receiving compensation under this Settlement, except that cost of plaintiff counsel-referred medical or psychological evaluations, or those IMEs not requested by NSRC are not included and will not be paid by NSRC;

   (b) to the extent not already paid by NSRC or any other person and/or entity and/or to the extent not previously released by reason of settlement or the Preceding Class Action Settlement, provide to all Class Members out-of-pocket lost wages incurred due to the mandatory evacuation following the Incident or due to medically necessitated absences as a result of their Incident-related personal injuries for which the Class Member is receiving compensation under this settlement.

   (c) provide to qualified members of Subclass 1 the sum of $20,000. Members of Subclass 1 who were Avondale workers who were at work within Evacuation Zone A at the time of the Incident shall receive an additional payment of $2,500. This amount includes

compensation for loss of consortium and is otherwise subject to set-off as set forth in the PSA and Protocol.

(d)     provide to qualified members of Subclass 2 the sum of $11,250. This amount includes compensation for loss of consortium and is otherwise subject to set-off as set forth in the PSA and Protocol.

(e)     provide to qualified members of Subclass 3 the sum of $9,375. This amount includes compensation for loss of consortium and is otherwise subject to set-off as set forth in the PSA and Protocol.

(f)     provide to qualified members of Subclass 4 the sum of $17,500. This amount includes compensation for loss of consortium and is otherwise subject to set-off as set forth in the PSA and Protocol.

(g)     provide to qualified members of Subclass 5 a sum of money to be determined by the Level 2 Compensation Matrix, as described in Section 2.2 below;

(h)     provide to qualified members of Subclass 6 a sum of money that will be determined by individual evaluation and negotiation of the Subclass 6 member's entire claim under this Class Settlement;

(i)     provide a Court-approved Class Settlement Claims Office, as described more fully below, to process and respond to claims made by Class Members pursuant to this settlement and to fairly implement the terms of this Settlement Agreement;

(j)     provide a process through which a Class Member may meet and confer regarding the relief to be granted under the settlement and may appeal matters to a court-appointed Special Master; and

(k)     pay costs of the settlement including Plaintiffs' counsel fees subject to approval by the Court in the amount provided for in Section 13 below. The costs of notice and other costs of administration of the settlement will be paid by NSRC as set forth below in Section 10.

(l)     NSRC will be responsible for extinguishing all Avondale workers' compensation liens and any other workers' compensation liens to the extent of benefits paid to, or on behalf of, Class Members (and not any administrative expenses, attorney fees, or other costs) arising from the injuries by which a claimant is a Class Member in this Settlement and of which NSRC is notified of by the Class Member, Class Counsel, or the insurance carrier. Indemnity agreements executed by Class Members in favor of NSRC in any Incident-related personal injury settlement with NSRC entered into

prior to the date of the Settlement are not superseded or altered by this provision.

(m)    As set forth more fully in Section 11.2 of the PSA and the Protocol, adjust any settlement payments by any applicable set-offs or credits

2.2    Level 2 Compensation Matrix for Qualifying Subclass 5 Members and Qualifying Subclass 6 Members Only

2.2.1    Base Amount of Compensation. Qualifying members of Subclass 5 shall receive $25,000 for the first calendar day of a Qualifying Hospitalization. There can be only one first day of Qualifying Hospitalization per claimant regardless of the total number of Qualifying Hospitalizations for a particular claimant. Qualifying members of Subclass 5 shall receive $18,750 for each additional calendar day of a Qualifying Hospitalization up to and including calendar day 6 of a Qualifying Hospitalization, or until discharge if equal to or less than 6 days. Qualifying members of Subclass 5 shall receive $25,000 for each additional calendar day of a Qualifying Hospitalization beginning on calendar day 7 of a Qualifying Hospitalization until discharge. Number of days of Hospitalization is calculated by the number of calendar days spent as an admitted in-patient in the hospital medically necessitated as part of Incident-related Medical Treatment, provided it is a Qualifying Hospitalization.

2.2.2    Possible Additions to Base Amount. Qualifying members of Subclass 5 may receive an additional sum based upon awards from categories 2.2.2(a) and 2.2.2(b) as set forth below and in the accompanying Protocol, which are subject to appropriate independent medical examinations at NSRC's option, which if exercised by NSRC will be at NSRC's expense. However, in no event may one person receive more than one pulmonary-related award, more than one chlorine-related non-pulmonary award, or more than one non-chlorine-related impairment award based on Section 2.2.2(a) below or more than one award based on Section 2.2.2(b) below.

(a)    Diagnosed permanent or persistent Incident-related pulmonary impairment due to exposure to chlorine (and other chlorine-related non-pulmonary add-on or non-chlorine-related impairments as set forth in the Protocol, including definitions for persistent and permanent) established by clinical presentation, medical tests, and first diagnosed prior to June 1, 2005 based upon criteria set forth in the Protocol and illustrated by the exemplars on file in the Class Settlement Claims Office, the aggregate additional award can be in a range of $12,500 to $93,750. Further, the aggregate of all awards under this Section 2.2.2(a) cannot exceed $93,750;

(b)    Documented Incident-related psychological or psychiatric impairment for which the qualifying Subclass 5 member received specialty psychiatric or psychological treatment during the period following the Incident and before August 1, 2005 and where said specialty psychiatric or psychological treatment is documented in medical records before August 1, 2005. Based upon criteria set forth in

the Protocol, the range of additional compensation under this Section 2.2.2(b) can be in a range of $6,250 to $93,750;

(c)     Among the criteria to be included and set forth in the Protocol for evaluation under Section 2.2.2(a) are: current and historical pulmonary function tests, smoking history, other work place exposure history, previously existing conditions, including but not limited to COPD and emphysema, the level of pulmonary impairment, the duration of impairment and whether persistent or permanent. Among the criteria to be included and set forth in the Protocol for evaluation under Section 2.2.2(b) are: the seriousness, duration, and extent of the Incident-related psychological or psychiatric impairment and resulting treatment as well as the context giving rise to that impairment and treatment in terms of one's physical location and proximity to, and conscious awareness of, the derailment and resulting release of chlorine at or about the time of the derailment.

2.2.3    Loss of Consortium.  Persons who were lawful spouses of qualifying members of Subclass 5 at the time of the Incident shall receive an amount equal to 10% of the sum of (1) the Base Amount of Compensation calculated for that Subclass 5 member pursuant to section 2.2.1, above, and (2) any amount(s) added pursuant to the Possible Additions pursuant to Sections 2.2.2 for which that Class Member qualifies.

2.2.4    All Liens Discharged.  Unless otherwise addressed separately, each Class Member, on their own behalf, agrees to discharge all liens, assignments, rights of subrogation, garnishments, encumbrances, security interests or any other legally perfected right of another person or entity over the settlement proceeds and further understands and agrees to indemnify, hold harmless and defend the Released Entities up to the amount of reimbursement and/or compensation received pursuant to this settlement with NSRC, from all claims by any federal, state or other government body, employer, attorney, insurer, and/or any other person or entity for all past, present and future liens or claims asserting a right of subrogation, right of indemnity, right of reimbursement or other such right for amounts paid or to be paid in consideration for this release of the Released Claims by such Class Member. This provision, which is in addition to any prior agreements, does not supersede or alter any indemnity agreements executed by Class Members in favor of NSRC.

2.2.5    Notice.  Any workers' compensation liens of which NSRC has not been notified prior to the payment of relief under this Agreement shall be the responsibility of the Class Members who also will indemnify the Released Entities pursuant to the indemnity provision below. NSRC will inform Class Counsel of any purported liens against Class Members of which it has been placed on notice by said lienholders. Class Counsel and Class Members will inform NSRC of any purported liens against Class Members of which they have been placed on notice by said lienholders.

2.3    Payment of Compensation.  Class Members may elect to receive any payment allowed for in Sections 2.1(c), (d), (e), (f), (g) and (h) and 2.2 as a lump sum,

12

in periodic payments as allowed by Sections 104(a)(2) and 130(c) of the Internal Revenue Code of 1986, as amended, into a special needs trust, or in combination thereof.

        2.3.1      Any Broker and Annuity Company utilized for the purchase of a qualified funding asset under this settlement must be agreed upon by the Class Member and NSRC. If no agreement on a Broker and Annuity Company is reached between NSRC and the Class Member, the settlement funds will be paid directly to the Class Member and no qualified funding asset will be purchased by NSRC notwithstanding the other terms of this Agreement. If the Class Member and NSRC do agree on a Broker and Annuity Company and a qualified funding asset is to be purchased, NSRC also agrees to complete documents necessary for the completion of the purchase of the qualified funding asset and to make the check(s) payable consistent with the structure selected by the Class Member. Class Members utilizing a qualified funding asset release and indemnify all Released Entities in connection with their election of a qualified funding asset under this settlement and agree that NSRC's payment of funds into a qualified funding asset as directed pursuant to Section 2.3 will be in full satisfaction of NSRC's payment obligations to the Class Member under the terms of the Settlement Agreement.

        2.3.2      Regardless of the method of payment(s) selected by the Class Member, the cost of such payment(s) to NSRC shall not exceed that which NSRC is obligated to pay Class Member under the terms of the Settlement Agreement. Moreover, any administrative or other expenses or fees associated with the purchase of a qualified funding asset or the establishment of a special needs trust shall be borne entirely by the respective Class Member and is not in any way the responsibility of NSRC, any Released Entity, Class Counsel, or private counsel.

## 3.      PRELIMINARY APPROVAL BY THE COURT AND CLASS CERTIFICATION

        3.1      <u>Obtaining Approval and Certification</u>.   Plaintiffs and NSRC, through their designated counsel, shall cooperate, assist and undertake all reasonable actions to accomplish the steps contemplated by this PSA and to implement the Settlement on the terms and conditions provided herein.

        Promptly after the execution of this PSA, Plaintiffs and NSRC shall submit this PSA as Exhibit A to the *Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters* and, simultaneously, a second motion, *Plaintiffs' Motion for Certification of a Class for Purposes of Settlement*, shall be submitted to the Court for preliminary approval and Class certification, respectively. The Parties shall submit to the Court for entry the Order for Preliminary Approval and Class Certification, substantially in the form attached hereto as Exhibit C.

        3.2      <u>Entry of Approval and Certification</u>. Upon entry of a Preliminary Approval and Certification Order, the Parties shall proceed with further steps to implement the Settlement on the terms and conditions of this PSA.

3.3    Limitation of Approval and Certification.    Certification of the Class in the Preliminary Approval and Class Certification Order shall be for settlement purposes only.

3.4    Non-Approval and Non-Certification.    In the event the Court fails to enter the Preliminary Approval and Class Certification Order, in which event it will enter an Order denying the Motion for Preliminary Approval and Class Certification Order, then the PSA is terminated, there is no certification of a Class, and the status of the litigation shall be as it was prior to the execution of the PSA without prejudice to any of the positions of the Parties, including on the issue of the appropriateness of class certification in other contexts.

4.    **NOTICE AND FAIRNESS HEARING**

4.1    Form and Publication of Notice.    Concurrently with the filing of the Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters and Plaintiffs' Motion for Certification of a Class for Purposes of Settlement, the Parties shall also submit for the Court's approval a form of notice of the certification of class, proposed settlement agreement, and fairness hearing, substantially in the form of Exhibit E (the "Notice"), and immediately thereafter, upon order of the Court, the Notice Agent (as defined in Section 11.6 below) shall disseminate the Notice to the Class in the manner so ordered. Costs of the Notice plan shall be borne by NSRC. The Parties shall request that the Court approve the following Notice Plan that the Parties agree provides adequate Notice in accordance with the requirements of FRCP Rule 23 and due process: (i) the publication version of Notice shall be published in English on two (2) days in total over two (2) consecutive weeks; namely during the weeks beginning January 22, 2007 and January 29, 2007, in the Aiken Standard, Augusta Chronicle, The State (Columbia), and the Post & Courier (Charleston), respectively, and on one day in total in Spanish in the bi-monthly Spanish-language newspaper, El Augustino, during the week beginning January 29, 2007, and (ii) the mailed version of the Notice shall be distributed by a direct mailing to the people who NSRC, based upon information and belief, has reason to believe may be members of the proposed Settlement Class, using their last known address. Additionally, the Clerk of Court for the Aiken County Court of Common Pleas, 109 Park Avenue, SE, Aiken, South Carolina 29801, shall be requested to post the Notice at her office. The Parties agree that the form and publication of the Notice as detailed in this Section 4.1 would constitute fair and adequate notice to the Class.

4.2    Courtesy Copies to Known Counsel.    Courtesy copies of the Notice also shall be mailed to attorneys other than Class Counsel who represent litigants who may be Class Members if NSRC or the Notice Agent is aware of that other representation by the filing of an appearance or by written communication received before January 1, 2007. Failure to mail a courtesy copy of the Notice to such other counsel will in no way render the Notice to the Class or to any specific Class Member inadequate or unreasonable.

      4.3    <u>Proof of Claim Forms</u>.   The Protocol sets forth the forms and deadlines for Class Members to file Proof of Claim Forms under the Settlement.

      4.4    <u>Proof of Claim Deadline</u>.  The Parties agree that the Notice shall include a deadline for filing in person or being mailed and postmarked within 90 days following the first publication of the Notice or no later than April 19, 2007, by which date completed Proof of Claim Forms must be filed with the Class Settlement Claims Office or postmarked in order to be timely for settlement.

      4.5    <u>Opt Outs from the Settlement</u>.  The Notice shall provide instructions to persons or entities who wish to Opt Out of the Class regarding the procedures that must be followed to timely Opt Out of the Class.  The Parties agree that the decision to Opt Out must be received in writing or postmarked within 60 days following the first mailing of the Notice or March 20, 2007, whichever is later.  The terms and conditions of the Settlement shall be explained in language that is readily understandable, and the persons in the Class shall be told of their rights to be heard regarding the terms of the Settlement at a fairness hearing, the time and date and place to be set forth in the Notice (the "<u>Fairness Hearing</u>").

      4.6    <u>Objections to the Settlement</u>.  The Notice shall state that any Class Member that wishes to appear to oppose the reasonableness and fairness of the Settlement at the Fairness Hearing must file an objection in writing, stating the basis of the objection, and then deliver said objection to the United States District Court Clerk at the following address:  Clerk of the Court, United States District Court, Matthew J. Perry, Jr. Courthouse, 901 Richland Street, Columbia, South Carolina 29201.  All objections must be filed with the Clerk of the United States District Court no later than March 20, 2007 and served on counsel for the Parties and received in writing or postmarked no later than March 20, 2007

      4.7    <u>Fairness Hearing</u>  The Notice shall set forth the date and time of the Fairness Hearing, as set by the Court, which will be held at the Charles E. Simmons, Jr. Federal Court House, 223 Park Avenue, S.W., Aiken, South Carolina 29801.  The date of the Fairness Hearing will be at least 90 days following the date on which the Court grants preliminary approval of the settlement, which will be held on or about April 27, 2007.

      4.8    <u>Failure to Object or Opt Out</u>.  Any person in the Class who does not so object by timely delivery of an objection (pursuant to the procedures set forth in the Notice) to the United States District Clerk of Court and to counsel for the Parties, shall be deemed to have waived, and shall forever be foreclosed from raising, any objection to the Settlement. All persons in the Class who do not timely exclude themselves from the Class by opting out shall in all respects be bound by all terms of this PSA, and the Final Order and Judgment finally dismissing the Released Claims as against NSRC and the Released Entities and shall be permanently barred from commencing, instituting, or prosecuting any action based on any Released Claim against NSRC or against any Released Entity in any court of law or equity, arbitration, tribunal or administrative or other forum.

4.9     Non-Approval and Non-Certification.  In the event the Court declines to approve the settlement and enter the Final Order and Judgment, in which event it will enter an Order denying final approval of the PSA and de-certifying the Class, then the PSA shall be terminated, and the status of the litigation and the Parties thereto shall be as it was prior to the execution of the PSA.

## 5.     RELEASE, ASSIGNMENT AND INDEMNIFICATION

5.1     Release and Covenant Not to Sue.  Plaintiffs, on their own behalf and on behalf of the Class Members, agree that the Final Order and Judgment will contain the following release, waiver and covenant not to sue, which shall take effect upon the Effective Date:

Each Class Member releases and forever discharges and holds harmless the Released Entities of and from any and all Released Claims which the Class Member has or may hereafter have. Each Class Member further covenants and agrees not to commence, file, initiate, institute, prosecute, maintain, or consent to any action or proceedings against the Released Entities based on the Released Claims.

5.2     Assignment.  The Released Claims of the Class Members as against NSRC are assigned to NSRC for the purpose of legally extinguishing any further liability of NSRC to Class Members for any Released Claims.

5.3     Indemnity.  Plaintiffs and each Class Member on their own behalf, further understand and agree to indemnify, hold harmless and defend the Released Entities up to the amount of reimbursement and/or compensation received pursuant to the PSA and any prior settlements with NSRC, from all claims by any state or other government body, employer, attorney, insurer, and/or any other entity for all past, present and future liens or claims asserting a right of subrogation, right of indemnity, right of reimbursement or other such right for amounts paid or to be paid in consideration for this release of the Released Claims by such Class Member.

5.4     Taxes.  Plaintiffs and each Class Member on their own behalf, further understand and agree that each Class Member is responsible for any tax consequences to each such Class Member arising from, related to, or in any way connected with the relief afforded to each such corresponding Class Member under the PSA.

## 6.     NO ADMISSION OF LIABILITY

a)     Neither this PSA, whether approved or not approved, nor any exhibit document, or instrument delivered pursuant to this PSA, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this PSA, is intended to or may be construed as or deemed to be evidence of (a) an admission or concession by NSRC or any Released Entity of any liability or wrongdoing, or of the truth of any allegations in the above-described litigation, or of the appropriateness of class certification in any other context, or (b) an admission or

16

concession by any Class Member of any lack of merit in the allegations made in the amended complaint.

b)    Pursuant to this PSA, and pursuant to Federal Rule of Evidence 408, the rules of evidence of the State of South Carolina, and any other applicable law, rule or regulation, the fact of entering into or carrying out this PSA, and any negotiations and proceedings related hereto, shall not be construed as, offered into evidence as, or deemed to be evidence of, an admission or concession of liability by or an estoppel against any of the Parties, a waiver of any applicable statute of limitations or repose, and shall not be offered or received into evidence, or considered, in any action or proceeding against any Party in any judicial, quasi-judicial, administrative agency, regulatory or self-regulatory organization, or other tribunal, or proceeding for any purpose whatsoever, other than to enforce the provisions of this Agreement or the provisions of any related agreement, release, or exhibit hereto.

## 7.    **REPRESENTATIONS AND WARRANTIES**

7.1    Authority of Class Counsel.    Class Counsel represents and warrants that they have authority to enter into this PSA on behalf of the Plaintiffs.

7.2    Authority of NSRC.    NSRC has all requisite corporate power and authority to execute, deliver and perform this PSA. The execution, delivery and performance by NSRC of this PSA has been duly authorized by all necessary corporate action. This PSA has been duly and validly executed and delivered by NSRC, and constitutes its legal, valid and binding obligation.

7.3    Necessary Steps.    Class Counsel on behalf of the Class, and NSRC represent that they:  (i) recommend this PSA to the Court as fair, reasonable, and in the best interests of the Class; and (ii) will undertake the necessary steps to support and effectuate the terms of this PSA in the event it is approved by the Court.

7.4    Liens, Assignments, Subrogation, etc.    Plaintiffs and Class Counsel further represent and warrant that, except for those items listed in Exhibit F, they have not received notice of any workers compensation lien asserting a claim to payment of all or a portion of any settlement amount of any Class Member.

## 8.    **FINAL ORDER AND JUDGMENT, DISMISSAL WITH PREJUDICE, AND CONTINUING JURISDICTION**

a)    Plaintiffs agree to seek Court dismissal with prejudice of all Released Claims by Class Members against all Released Entities in this Case and any Related Actions when the Final Order and Judgment is entered, with each party to bear its own costs, except as otherwise provided herein. This PSA shall be the exclusive remedy for any and all Released Claims by any and all Class Members against any and all Released Entities. Upon the Effective Date, each Class Member shall be barred from

17

initiating, asserting, maintaining, or prosecuting any Released Claims as against any Released Entities.

b)    The Parties also agree that the Final Order and Judgment shall include a finding by the Court that to the extent this Settlement results in the splitting of the claim of any Class Member, that such result has been agreed to by the Parties, and that any remaining claim of a Class Member not settled by this Settlement is expressly reserved.

c)    The Parties agree that the Settlement shall be the exclusive remedy for the Class with respect to Released Claims as against any and all Released Entities, and that no Class Member shall recover, directly or indirectly, any sums from NSRC or the other Released Entities for Released Claims other than those received from the Settlement for the Released Claims under the terms of this PSA.

d)    The Parties agree, that upon the Effective Date, this PSA will fully and completely settle the Released Claims as against the Released Entities by Class Members. The Parties agree that upon the Effective Date, the Released Entities will be finally released from any and all Released Claims by all Class Members. Further, the Parties agree that each and every Class Member, and all other persons and entities claiming by, through, or on behalf of, a Class Member, will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against the Released Entities with respect to the Released Claims.

e)    The Court shall retain jurisdiction over this Case, the Preliminary Settlement Agreement, the Final Order and Judgment, the Class Members, the Plaintiffs, and NSRC for the purpose of administering, supervising, construing and enforcing the PSA and the Final Order and Judgment, and supervising the management and disbursement of the settlement and disputes that arise under the PSA.

9.    **EXCLUSIVE REMEDY AND INJUNCTION**

9.1    Exclusive Remedy. This PSA shall be the exclusive remedy for any and all Released Claims of Class Members against NSRC and the other Released Entities. No Released Entity shall be subject to liability or expense of any kind to any Class Member for any Released Claims beyond that which is provided for in this PSA.

9.2    Injunction. After the Court enters the Final Order and Judgment approving this PSA, each Class Member shall be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action or other proceeding, whether by intervention, joinder or as a Class Member, for any Released Claims against any Released Entities in any court of law or equity, arbitration, administrative or other forum. After the Final Order and Judgment is entered by the Court, if any Class Member has commenced, filed, initiated, instituted, or consented to, or is prosecuting or maintaining any action or other proceeding for any

18

Released Claims against any Released Entities in another court of law or equity, arbitration tribunal or administrative or other forum, that action or other proceeding of such Released Claims against any Released Entities shall be dismissed with prejudice and at such Class Member's cost.

## 10.    ROLE OF CLASS SETTLEMENT CLAIMS OFFICE, NOTICE AGENT, AND SPECIAL MASTER

10.1    Class Settlement Claims Office.    An official Class Settlement Claims Office will be located at 124 Ascauga Lake Road, Graniteville, South Carolina 29829, will have a mailing address of "Class Settlement Claims Office, 124 Ascauga Lake Road, Graniteville, South Carolina 29829," and will process the settlement of claims under this Agreement. Class Members may submit proof of claim forms, substantially in the form of Exhibit D to the Class Settlement Claims Office. Proof of Claim Forms must be submitted by hand to the Class Settlement Claims Office or mailed to the Class Settlement Claims Office, postage prepaid and postmarked by April 19, 2007. The Class Settlement Claims Office shall be staffed by NSRC employees and/or NSRC contracted personnel. The hours, location, address, and telephone number of the Class Settlement Claims Office will be published in the notice.

10.2    Duties of the Class Settlement Claims Office.    The Class Settlement Claims Office shall have the responsibility of processing and evaluating claims submitted for settlement. The procedures for the processing, approval, and settlement of claims that qualify for settlement under this Agreement are set forth in the Claims Processing Procedure Protocol. The Class Settlement Claims Office shall carry out such duties in as economical and effective manner as possible and shall consult with and report to NSRC's counsel and Class Counsel on a regular basis. Class Counsel and counsel for NSRC shall be entitled to inspect the Class settlement processing-related records for this settlement of the Class Settlement Claims Office at any time during the processing of Class Member claims, upon reasonable notice.

10.3    Class Counsel and their Staff at the Class Settlement Claims Office. Class Counsel and their staff shall have access to, and use of, a work area or room to be designated at the facilities of the Class Settlement Claims Office.

10.4    Role of Class Counsel and their Staff at the Class Settlement Claims Office.  Class Counsel and their staff at the Class Settlement Claims Office will have the following duties in addition to those duties set forth in the Claims Processing Procedure Protocol:

      (a)    Responding to requests for Proof of Claim Forms and for information about filing Proof of Claim Forms under this PSA;

      (b)    Assisting Class Members who are not otherwise represented by private counsel with the preparation and submission of their Proof of Claim Forms and the

19

submission of medical records, authorizations, and other proofs, including scheduling of Class Members for any requested independent medical evaluations, if Class Members so request (provided however that Class Counsel is not responsible for the payment of costs associated with obtaining the supporting evidence or documentation for a Class Member's claim);

(c)    Conducting the initial review of Proof of Claim Forms of Class Members not otherwise represented by private counsel before full processing and evaluation by the Claim Reviewers pursuant to the procedures set forth in the Claims Processing Procedure Protocol, provided that such initial review will occur only after the Proof of Claim Form has first been time-stamped and docketed by the Claim Reviewers (as defined in the Claims Processing Procedure Protocol);

(d)    Assisting Class Members in responding to any inquiries from the Claim Reviewer (as defined in the Claims Processing Procedure Protocol), if Class Members so request; and

(e)    Coordinating and communicating with other counsel retained by Class Members.

(f)    Assisting in the collection of medical records necessary to establish class membership for those claiming class membership who are not previously identified by NSRC as exempt from providing such records and who are not otherwise represented by private counsel.

10.5    Items For Which Class Counsel Shall Not Be Responsible. Class Counsel and their staff shall not be responsible for the following duties:

(a)    Performing medical work-ups of Claimants;

(b)    Retaining experts to establish Claimants' individual chlorine exposure or individual causation;

(c)    Collecting medical records beyond those necessary to establish class membership for those claiming class membership who are not previously identified by NSRC as exempt from providing such records.

10.6    Notice Agent. The Parties shall agree on the selection of a third-party Notice Agent who shall be responsible for the publication and giving of Notice to the Class in accordance with the Court's Order, the collection, identification, and

processing of any Opt Outs, the prompt transmission to Class Counsel, NSRC's counsel, the Class Settlement Claims Office of the identity and number of Opt Outs, and the reporting of its activities to the Parties and the Court.

10.7    Duties of the Special Master.  The duties of the Special Master are described more fully in the Claims Processing Procedure Protocol.  The Special Master shall carry out such duties in as economical and effective manner as possible and shall consult with and report to Class Counsel and NSRC's counsel on a regular basis.  Class Counsel and counsel for NSRC shall be entitled to inspect the records of the Special Master at any time, upon reasonable notice.

10.8    Appeals of Settlement Relief.    Under the Claims Processing Procedure Protocol, each Class Member who submits a Proof of Claim Form shall receive a Claim Response Report (as defined in the Claims Processing Procedure Protocol), which sets forth the relief to be granted, if any, on the Class Member's claims under the settlement.  By following the appeal procedures set forth in the Claims Processing Procedure Protocol, a Class Member may appeal certain elements of the Claim Response Report. The Special Master shall review such appeal and determine whether the relief should be amended based on the factors and procedures set forth in the Claims Processing Procedure Protocol.

## 11.    CLAIMS PROCESSING AND EVALUATION

11.1    Claim Evaluation.  The personnel of the Class Settlement Claims Office shall review and evaluate the claims submitted by Class Members, pursuant to the factors and procedures set forth in the Claims Processing Procedure Protocol.

11.1.1    Supporting Proof of Claim.  Each Class Member who submits a Proof of Claim Form bears the burden of proving to the Class Settlement Claims Office, by a preponderance of the evidence, all elements of proof necessary to qualify for the relief sought in the Class Member's Proof of Claim Form under this PSA and the Claims Processing Procedure Protocol.  The nature and sufficiency of the proof required of a Class Member to meet this burden shall be governed by the Federal Rules of Evidence in accordance with the substantive law of South Carolina.  Examples of adequate supporting proof are more specifically set forth in the Claims Processing Procedure Protocol.

11.1.2    Presumption.  With respect to members of Subclass 1, Subclass 4, or Subclass 5 who were physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment, there is a presumption that the person's condition for which Medical Treatment was obtained was caused by chlorine from the Incident, provided (a) the Medical Treatment was for objective manifested physical symptoms consistent with chlorine exposure, and (b) the Medical Treatment was obtained on or prior to January 20, 2005.

11.1.3    Evidentiary Standards. Claims of Individuals not entitled to a presumption under this Agreement must be established based on the preponderance of evidence required under South Carolina law and in accordance with the terms of this Agreement. Diagnosis of chlorine-related injury must meet evidentiary standards for proximate causation and medical proof under South Carolina law and must include medical records, and hospital records if any, showing an objective manifested physical injury caused by exposure to chlorine resulting from the Incident and created at or near the time of the Medical Treatment relied upon by a Class Member to qualify for membership in the Class, any Subclass, and/or for any available add-ons.

11.1.4    Claim Response Report and Appeal by Class Member. After evaluating a Class Member's claim and submitted proof, if any, the Class Settlement Claims Office shall forward to Class Counsel, the Class Member and the Class Member's other counsel, if any, a Claim Response Report (as defined in the Claims Processing Procedure Protocol), which sets forth the relief to be granted.

11.1.4.1    The Class Member may appeal those appealable elements of the Claim Response Report by filing an Appeal Request pursuant to the procedures contained in the Claims Processing Procedure Protocol. The Class Member's appeal shall be reviewed by the Special Master to determine whether the relief granted was substantially in accord with this Agreement and the Claims Processing Procedure Protocol.

11.1.4.2    The Claims Processing Procedure Protocol provides for a meet and confer process following the issuance of a Class Member's Claim Response Report that enables the Class Member, Class Counsel and the Class Member's other counsel, if any, to meet and confer with the Class Settlement Claims Office to discuss the Class Member's Claim Response Report and to seek modification and/or correction to it.

11.2    Set-Offs/Credits. Amounts granted to a Class Member for any claims under the PSA are subject to set-offs/credits against amounts previously paid by NSRC to such Class Member for similar categories of payments (i.e., personal injury, medical expense payments, lost wages) and shall be based on the information contained in the NSRC database, NSRC settlement matrix, and NSRC's files. NSRC is required to prove these set-offs by a preponderance of the evidence. Further, for any request made prior to the end of the opt-out period, NSRC shall, within ten calendar days of a request by Class Counsel, provide Class Counsel with applicable set-off information for an individual to the extent it differs from that set forth on the database provided by NSRC.

11.2.1    Right to Settle and Release. The Parties and Class Counsel fully recognize the right of all Class Members to have entered into settlement agreements and releases with NSRC, with or without representation by an attorney, prior to the date of this PSA, and NSRC's right to offer compensation and enter into such settlements, and nothing in this PSA shall be construed to impair, limit, or dispute those rights. With respect to Class Members who previously released their claims with NSRC, such releases are presumptively valid under South Carolina law. The Parties fully

recognize that to the extent a Class Member who previously released his/her claim against NSRC Opts Out of the Class, NSRC will seek to enforce the prior release to the full extent permitted under the law and that participation in the Class and this Settlement is the only method by which a Class Member who previously released NSRC possibly could obtain some additional relief without such Class Member having to meet the legal and factual burdens required under South Carolina law.

11.3    Appeals to Court.  NSRC and Class Members may appeal certain matters reviewed by the Special Master pursuant to the procedures set forth in the Claims Processing Procedure Protocol.

11.4    Non-Timely Filing of Proof of Claim Form.  The Released Claims of Class Members who do not file timely Proof of Claim Forms as required herein, and substantially in the form of Exhibit D, are forever barred as specified in the Final Order and Judgment.

11.5    Claims of Minors/Claimants Who Lack Capacity.  The Parties agree to jointly move the Court to appoint a Guardian Ad Litem to represent the Class Members who are minors or who lack capacity.  The Guardian Ad Litem will, at the direction of the Court, make an independent investigation, on behalf of Class Members who are minors or who lack capacity, into the terms and provisions of this Agreement. Based on her/his independent investigation, the Guardian Ad Litem will make a recommendation to the Court as to the fairness of this Agreement with respect to Class Members who are minors or who lack capacity prior to the entry of Final Judgment.

11.6    Subrogation and Similar Claims.  If any federal, state or other government body, employer, attorney, insurer and/or any other entity claims any rights such as liens, assignments, rights of subrogation, encumbrances, garnishments, security interests or any other legally perfected right with respect to a Class Member's settlement amount, NSRC will arrange to have such settlement amount paid into an escrow account administered by the Special Master.  The settlement amount paid into the Special Master administered escrow account will be paid, following the determination of the rights to such settlement amount.

11.7    Accelerated Implementation Option.  The Proof of Claim Form will provide a place where a Class Member can elect the Accelerated Implementation Option.  Class Members electing the Accelerated Implementation Option agree to be bound by all provisions of this Agreement and Protocol, including the Release of Released Entities for Released Claims, the Terms of the Final Order and Judgment, and to participate in the Claim Process following the expiration of the opt-out period, regardless of whether final approval of the settlement is given by the Court or the Effective Date occurs.  In the event that the Class Member's claim is resolved prior to the Effective Date pursuant to this provision, the Class Member electing the Accelerated Implementation Option will be required to separately execute a release and indemnity agreement incorporating the terms and provisions of this PSA and the proposed Final Order and Judgment.  This election of this option only becomes effective once the period

23

for Class Members to request exclusion from the Class has expired and NSRC has not exercised its right of withdrawal under Section 14.3 of this PSA.

## 12.    SETTLEMENT COSTS

NSRC agrees to pay all Settlement Costs and to establish a system to account for the payment of such Settlement Costs.

## 13.    CLASS COUNSEL'S FEES

13.1    Class Counsel Base Fee.  Subject to Court approval, NSRC agrees to pay an amount up to 33 and 1/3 percent of the claim amounts paid to Class Members pursuant to these Settlement terms.  The base amount upon which attorneys' fees will be calculated will not include amounts paid by NSRC to extinguish workers' compensation liens or amounts paid Class Members previously and applied as set-offs in this Class, but will include other amounts paid to settle personal injury claims of otherwise Class Members pursuant to any applicable executed written letter agreements pertaining to attorney fees entered into in connection with the negotiation of this proposed Class settlement, if any.  The payment of attorneys' fees will be paid separately and will not be deducted by either NSRC, Class Counsel, or Private Counsel from the amounts of potential compensation for Class Members set forth in the Settlement Matrix sections above.  Except as specified elsewhere, this amount will not be due and owing until after the Effective Date and will be paid periodically in accordance with the terms set forth in Section 13.1.1.  Class Counsel will be responsible, subject to Court approval, for distributing the attorney fees paid among Class Counsel and private counsel.  Unless specified elsewhere, Norfolk Southern is not, and will not be, responsible for any other fees, costs, or expenses of any kind incurred by Class Counsel, private counsel, or class members in connection with the preparation, investigation, evaluation, filing or prosecution of any claims under this settlement, including but not limited to the cost of medical evaluations not related to treatment or the preparation of life care plans or other economic evaluations, or in connection with any efforts by Class Counsel, private counsel or Class Members to obtain approval of this Class Action settlement prior to and including the Effective Date.

13.1.1    Manner of Payment.  Ten (10) days following the Effective Date and on a quarterly basis thereafter, NSRC will on an installment basis set forth in the Protocol, pay Class Counsel attorneys' expenses and fees, which shall be calculated in the following manner: the aggregate amount of thirty-three and one-third (33 1/3%) of the total aggregate settlement sums (after set-offs/credits) as set forth above paid during the preceding calendar quarter, except that beginning with the first quarterly payment to Class Counsel and continuing thereafter, the payment of counsel fees will be reduced until NSRC receives full credit for the advance set forth in Section 13.1.2 below.

13.1.2    Advance.  Ten business days following the Court's preliminary approval of this Settlement, NSRC will cause an advance against Attorneys' Fees to be paid to Class Counsel in the amount of $250,000.  This payment will be non-

refundable but will be a credit against Attorneys Fees that come due and owing following the Effective Date of this Settlement.

13.1.3    Costs. Notwithstanding the above, and subject to Court approval and receipts and other documentary proof subject to examination, review, and dispute by NSRC to be submitted by Class Counsel, NSRC shall reimburse expert fees and general litigation costs of Class Counsel for work done to benefit the entire Class (not individual evaluations) in an amount not to exceed $200,000. Class Counsel can make application to the Court for this payment following the Effective Date and after the final Class Member is paid pursuant to this Settlement. If approved by the Court, NSRC will pay the approved sum up to the limit set forth in this provision within twenty (20) business days.

13.1.4    Private Counsel Fees. Subject to Court approval and upon occurrence of the Effective Date, a private counsel representing individual Class Members who have received payment made pursuant to this Settlement Agreement shall be entitled to payment from Class Counsel as attorney fees of up to 75% of those moneys paid to Class Counsel by NSRC pursuant to Section 13.1.1 that are allocable to the claims made by those individual Class Members represented by said private counsel, provided however that payment of any such moneys to private counsel is expressly conditioned on prior satisfaction of the following requirements:

(a)    occurrence of the Effective Date;

(b)    provision by private counsel to Class Counsel of a copy a valid retention contract executed prior to October 23, 2006 between the private counsel and the individual Class Member for which private counsel seeks payment of attorney fees pursuant to this section within 60 days of said individual class member signing and returning his / her acceptance of remedy form;

(c)    that the retention contract between the private counsel and such individual Class Member provides for a contingency fee in favor of the private counsel equal to or exceeding 75% of those moneys paid to Class Counsel by NSRC pursuant to Section 13.1.1 that are allocable to the claims made by those individual Class Members represented by said private counsel; and

(d)    provision by private counsel to Class Counsel of a copy of said individual class member's signed acceptance of remedy form within 60 days of said individual class member signing and returning his/her acceptance of remedy form.

13.1.5    In no event shall a private counsel be entitled to more than 75% of those moneys paid to Class Counsel by NSRC pursuant to Section 13.1.1 that are allocable to a claim made by an individual Class Member represented by private counsel.

13.1.6    NSRC is directed to make payments to qualifying Class Members pursuant to this Settlement by checks made payable to the specific Class Member(s) or as otherwise directed by said Class Members; neither private counsel or Class Counsel have any recourse against NSRC or other Released Entities for the failure to include private counsel or Class Counsel as joint payees on checks made payable to Class Members.

13.1.7    In the event that the retention contract between a private counsel and an individual Class Member provides for a contingency fee in favor of private counsel that is less than 75% of those moneys paid to Class Counsel by NSRC pursuant to Section 13.1.1 that are allocable to the claim made by an individual Class Member represented by said private counsel, then private counsel shall be entitled to payment under Section 13.1.4 of only that amount of attorneys fees equivalent to the amount to the contingency fee provided for in the retention contract.

13.1.8    In no event shall a private counsel be entitled to make a claim for expenses or costs against either Class Counsel or Released Entities for those moneys paid to Class Counsel by NSRC pursuant to Section 13.1.1, 13.1.2, or 13.1.3.

13.1.9    Payment of Private Counsel Fees. Within 15 days of Class Counsel receiving those moneys paid to Class Counsel by NSRC pursuant to Section 13.1.1 that are allocable to the claims made by those individual Class Members represented by said private counsel, and upon satisfaction of each of the requirements set forth in Section 13.1.4 and subject to Section 13.1.7, Class Counsel shall pay such moneys that are due private counsel pursuant to Sections 13.1.4.

13.1.10    Nothing herein is to be construed as affecting any retention contract between private counsel and any individual Class Member.

13.1.11    Disputes. Any disputes arising under Sections 13.1.4 through 13.1.10 shall be resolved by the Special Master. Decisions by the Special Master are not appealable.

13.2    Limitations.

13.2.1    Under no circumstances shall NSRC be required to pay an amount greater than the sums set forth in this Agreement in payment of attorney fees and expenses of Class Counsel and/or private or other counsel representing Class Members.

13.2.2    Class Counsel will seek no other fees or compensation relating to the implementation of this Settlement from the Related Entities, including the services described in Section 10.4 above, and in the Claims Processing Procedure Protocol.

13.2.3    If the Effective Date does not occur and the Class is not certified, no fees and expenses will be paid to Class Counsel by NSRC, other than the

advance pursuant to Section 13.1.2 above. All Class Counsel fees and expenses under this Agreement shall be subject to Court Approval.

        13.2.4    NSRC is not responsible for any fees or expenses of any other counsel retained by Class Members or Class Counsel.

## 14.    <u>RIGHTS OF WITHDRAWAL</u>

        a)    The Notice Agent shall report to Class Counsel and counsel for NSRC on the total number and identity of all Opt Outs.

        b)    If NSRC, in accordance with the terms of a Confidential Supplemental Agreement, determines that the number or identity of the Opt Outs is unsatisfactory, NSRC shall have the right to withdraw from the settlement and terminate this PSA, in accordance with Section 14 (c) below. In addition, if the Court has ordered a material modification of any of the terms of the settlement, either of the Parties shall have the right to withdraw from the settlement and terminate this PSA, in accordance with Section 14 (c) below.

        c)    In the event that NSRC wishes to exercise its right to terminate the PSA under this Section 14 because the number or identity of the Opt Outs is unsatisfactory, NSRC must notify the other Party in writing, within seven (7) days after receipt of the Notice Agent's final report on the number and identity of Opt Outs, of its intention to withdraw from the settlement and terminate this PSA. Additionally, in the event either Party wishes to exercise its right to terminate the PSA under this Section 14 because the Court has ordered a material modification of any of the terms of the settlement, the withdrawing party must notify the other Party within seven (7) days of Court-ordered material modification. Thereafter counsel for NSRC, Class Counsel and the Court shall meet to discuss and attempt to resolve the problems. If the Parties are unable to resolve the problems and the PSA is to be terminated, the withdrawing Party shall then give written confirmation of the withdrawal and termination to the other Party and the Court no later than 10 days after the meeting with the Court. If the Parties are able to resolve the problems in favor of proceeding with the settlement, then, subject to any modifications arising from the meeting, the Parties shall proceed toward the final resolution of this Case and the dismissal with prejudice of the Released Entities from this Case and the Related Actions.

## 15.    <u>CONSEQUENCES OF TERMINATION</u>

        In the event that any Party withdraws from the settlement and terminates this PSA under Section 14 above, then the Class shall be decertified and the status of the litigation shall be as it was prior to the execution of the PSA, and notice will be given to the putative Class of such termination in a manner approved by the Court and at the expense of the withdrawing Party.

**16.    OTHER OBLIGATIONS OF THE PARTIES**

16.1    <u>Best Efforts</u>.  The Parties shall use their best efforts to perform all terms of this PSA.

16.2    <u>Entire Agreement</u>.    This PSA, including attached exhibits, constitutes the entire agreement by and among the Parties with regard to the subject matter of this PSA, and shall supersede any previous agreements and understanding among the Parties with respect to the subject matter of this PSA and the settlement.

16.3    <u>Amendment</u>.  This PSA may not be modified or amended except in writing signed by counsel for all Parties.

16.4    <u>Notices</u>.  Any notice, request, instruction, or other document to be given by any Party to this PSA to any other Party to this PSA, other than class notification, shall be in writing and delivered by messenger or sent by an overnight delivery service to:

<u>If to Plaintiffs</u>:

<u>Co-Lead Class Counsel</u>:

>Joseph F. Rice, Esq.
>Motley Rice LLC
>28 Bridgeside Boulevard
>Mount Pleasant, South Carolina 29465

>and

>Terry E. Richardson, Jr., Esq.
>Richardson, Patrick, Westbrook and Brickman LLC
>1730 Jackson Street
>Barnwell, South Carolina  29812

<u>If to NSRC</u>:

>Daniel B. White, Esq.
>Gallivan, White & Boyd, P.A.
>One Liberty Square
>55 Beattie Place, Suite 1200
>Greenville, South Carolina 29601

>Sheila L. Birnbaum, Esq.
>Skadden, Arps, Slate, Meagher & Flom LLP
>4 Times Square
>New York, NY  10036

All applications for Court approval or Court orders required under this PSA shall be made on notice to all signatories of this PSA.

16.5    Construction.  This PSA is the result of a mutual negotiation between counsel for the Parties.  Any ambiguity in this PSA shall not presumptively be construed in favor of or against any Party.

16.6    Severability.  The provisions of this PSA are not severable.

16.7    Governing Law.  All the terms of this PSA shall be governed by and interpreted according to the laws of the State of South Carolina, except to the extent federal law applies.

16.8    Survival.  All representations, warranties and covenants set forth in this PSA shall be deemed continuing and shall survive the date of this PSA, or termination or expiration of this PSA.

16.9    Further Assurances.  Each of the Parties agrees, without further consideration, and as part of finalizing the settlement hereunder, to execute and deliver such other documents and take such other actions that may be necessary to consummate and effectuate the subject matter and purpose of this PSA.

16.10   Counterparts.  This PSA may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement, provided that this PSA shall not be complete until it has been signed by everyone for whom a signature line has been provided.


**IN WITNESS WHEREOF**, the Parties hereto have caused this PSA to be executed by duly authorized representatives on the dates indicated below.

PLAINTIFFS AND ALL CLASS
COUNSEL IDENTIFIED ON THE
ATTACHED EXHIBIT G:

PLAINTIFFS AND ALL CLASS
COUNSEL IDENTIFIED ON THE
ATTACHED EXHIBIT G:

By _____ date 12/22/06

Joseph F. Rice, Esq.
Motley Rice, LLC

Co-Lead Class Counsel

By _____ date 12-22-06

Terry E. Richardson Jr., Esq.
Richardson, Patrick, Westbrook
and Brickman, LLC

Co-Lead Class Counsel

DEFENDANT:
Norfolk Southern Railway Company

By _____ date 14/21/06

Daniel B. White, Esq.
Gallivan, White & Boyd, P.A.

Counsel for Defendant

By _____ date 12-22-06

Sheila L. Birnbaum, Esq.
Skadden, Arps, Slate,
  Meagher & Flom LLP

Counsel for Defendant

30

## LIST OF EXHIBITS

| | |
|---|---|
| Exhibit A | Claims Processing Procedure Protocol |
| Exhibit B | Maps of Areas of Mandatory Evacuation Zones |
| Exhibit C | Draft Preliminary Approval and Class Certification Order |
| Exhibit D | Proof of Claim Form |
| Exhibit E | Notice of Proposed Class Certification, Proposed Settlement of Class Action, Opportunity for Exclusion from Class, Deadline for Filing Claims within the Class, and Date of Court Hearing (mailed and publication versions) |
| Exhibit F | Listing of Known Liens, Assignments, Subrogations, Garnishments, etc. |
| Exhibit G | List of Class Counsel |