IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Sara Olvera, Abner Johnson, Lillian D. Witt, Marion Williams, and Phyllis Williams, individually and and as representatives of a proposed class of others similarly situated, ) ) ) ) ) ) Plaintiffs, ) ) vs. ) ) Norfolk Southern Railway Company, ) ) Defendant. ) _____) | C/A No. 1:06-3597-MBS |

ORDER FOR PRELIMINARY CERTIFICATION OF A CLASS FOR
PURPOSES OF SETTLEMENT AND PRELIMINARY APPROVAL OF CLASS
<u>SETTLEMENT, CLASS NOTICE AND RELATED MATTERS</u>

Upon considering Plaintiffs' Motion for Certification of a Class for Purposes of Settlement (the "Certification Motion"), filed by Plaintiffs on December 22, 2006 (Entry 5), and Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters (the "Joint Motion"), filed by Plaintiffs and Defendant Norfolk Southern Railway Company ("NSRC") on December 27, 2006, seeking preliminary approval of the Proposed Settlement Agreement, together with all of its Exhibits attached thereto,(the "PSA" or the "Proposed Settlement") (Entry 8), and on considering the record of these proceedings, the representations, argument, and recommendation of counsel for the moving parties, and the requirements of law, the court finds that (1) the court has jurisdiction over the subject matter and parties to this proceeding; (2) the proposed Class meets the requirements of Fed. R. Civ. P. 23 and should be certified on a preliminary basis for purposes of settlement only and the persons and entities set forth below should be appointed class representatives; (3) the Proposed

Settlement is the result of arms-length negotiations between the parties; (4) the Proposed Settlement is not the result of collusion; (5) the Proposed Settlement bears a probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of NSRC; (6) the Proposed Settlement is within the range of possible judicial approval; (7) the proposed class notice substantially in the forms attached hereto as Exhibit E to the PSA (the "Notice") and the proposed notice plan will provide the best practicable notice to the putative Class under the circumstances, satisfying the requirements of Rule 23 and due process; (8) reasonable cause exists to conduct a hearing, pursuant to Rule 23(e) to consider whether the Proposed Settlement is fair, reasonable and adequate and whether it should be approved pursuant to Rule 23; and (9) the other related matters pertinent to the preliminary approval of the Proposed Settlement should also be approved.  Accordingly,

**IT IS ORDERED, ADJUDGED AND DECREED** that:

1. The court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

2. Venue is proper in this district.

3. On a preliminary basis for settlement purposes only, the Fed. R. Civ. P. 23 factors are present and certification of the proposed Class and each of the Subclasses, as defined and set forth below, is appropriate under Rule 23 and Rule 23(b)(3).

4. The Class and Subclasses shall be defined as follows:

> The "Class": all natural persons born prior to January 6, 2005 (or in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) as well as any person or entity claiming by, through, or under a Class Member (as defined), including any person or entity claiming a subrogation interest not related to workers' compensation for amounts paid on behalf of Class Members, but excluding those persons as set forth below. The Class is comprised of the following Subclasses, which are mutually

2

exclusive of each other. If a definition of more than one Subclass among the Subclasses 1-5 describes a single person, that person shall be a member of the Subclass for which the person will receive a larger award under this Settlement. If a person is a member of Subclass 6, the person will not be a member of any other Subclass:

"**Subclass 1**". All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

"**Subclass 2**". All persons physically present in Evacuation Zone B on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider for an objective manifested physical injury caused by chlorine exposure from the Incident on or prior to February 1, 2005 and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

"**Subclass 3**". All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider after February 1, 2005 but before April 6, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

"**Subclass 4**". All persons physically present in Evacuation Zone A at any time between January 6, 2005 and January 11, 2005, whose presence was solely by reason of their responsibility as professional members of law enforcement, fire department, emergency services, and other governmental agencies responding to the Incident and who received Medical Treatment from a licensed physician or licensed health care provider on or before

February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

**"Subclass 5"**. All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and whose Incident-related Medical Treatment included at least one Overnight Hospitalization on or before February 1, 2005 and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

**"Subclass 6"**. All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who have exhibited objective physical symptoms that were diagnosed by a licensed physician, psychiatrist or psychologist prior to March 6, 2005 as being caused by having contemporaneously observed a closely-related person (a) being exposed to chlorine on January 6, 2005 due to the Incident and (b) the occurrence of serious personal injury or death of that closely-related person due to the Incident and who (1) validly opted out of the Preceding Class or Preceding Subclass 3, and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

**Other Exclusions From Class and All Subclasses**. The Class (and all of the subclasses) also shall not include: (i) NSRC or any of its employees, agents, contractors, and subcontractors, including employees of NSRC's agents, contractors or subcontractors, (ii) the judge overseeing the case and the judge's immediate family, (iii) persons who at the time they settled and released their claims for personal injuries against NSRC were represented by attorneys, and whose attorneys participated in the settlement or acquiesced to the settlement with a release of such persons' personal injury claims, (iv) Opt Outs (as defined), (v) persons with claims and damages for wrongful death or related survival actions arising out of, related to, resulting from or connected in any way with the Incident and that accrued prior to the date of this Settlement; and (vi) members of subclass 3 of the Preceding Class Action Settlement.

5.  The capitalized terms used above and elsewhere in this Final Order and Judgment shall have the following meanings:

> "Class Members" means all natural and juridical and legal persons (or, in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) in the Class who do not Opt Out (as defined below) in accordance with Fed. R. Civ. P. 23(c)(2) and the procedures set forth in the Notice, including any lawful spouse of a class member existing at the Time of Derailment whether or not said spouse was physically present in an Evacuation Zone for purposes of loss of consortium and other derivative claims recognized under South Carolina law.
>
> "Evacuation Zone A" shall mean those areas within a one mile radius of the Place of Derailment in which a shelter-in-place occurred and a mandatory evacuation was ordered on January 6, 2005, and the period of mandatory evacuation extended beyond 11:59 p.m. Eastern Standard Time on January 9, 2005 and are those areas designated as Evacuation Zone A on the map attached to the PSA as Exhibit B.
>
> "Evacuation Zone B" shall mean those areas outside the one mile radius from the Place of Derailment in which a shelter-in-place and/or mandatory evacuation order was issued on January 6, 2005, and the period of mandatory evacuation did not extend beyond 11:59 p.m. Eastern Standard Time on January 9, 2005 and are those areas designated as Evacuation Zone B on the map attached to the PSA as Exhibit B.
>
> "Incident" means the January 6, 2005 train collision, derailment, release of chlorine, emergency response, clean-up, shelter-in-place, and evacuation at Graniteville, South Carolina.
>
> "Loss of Consortium" shall include any and all derivative claims available to lawful spouses under South Carolina law, including but not limited to those referred to as loss of consortium, loss of society and companionship, or loss of services.
>
> "Medical Treatment" shall mean medical actions taken to cure, treat or remedy an objective manifested physical injury except that the term "Medical Treatment" does not include (i) any diagnostic examinations or tests, (ii) any medical or other actions taken to decontaminate the body, or any parts of the body, of a person from chlorine due to the Incident, or (iii) any medical or other actions taken to prevent exposure to chlorine or injury and not to cure,

treat or remedy an already existing objective manifested physical injury caused by exposure to chlorine.

"Opt Out" shall mean the process for all natural and juridical and legal persons (or, in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) and entities to exercise their right to exclude themselves from the Class in accordance with Fed. R. Civ. P. 23(c)(2) and the procedures set forth in the Notice.

"Opt Outs" shall mean those natural and juridical and legal persons (or, in the case of minority, death or incapacity, their tutors, successions, or legal guardians or representatives) and entities included in the Class who have timely and properly exercised their right to Opt Out of the Class, and therefore are not Class Members.

"Overnight Hospitalization" means that the person was admitted to the hospital for in-patient care and Medical Treatment and the period of admission included at least one occurrence of 12:00 a.m. Eastern Standard Time.

"Preceding Class" or "Preceding Subclass 3" means the Class and/or Subclass 3 as defined in the Final Order and Judgment of Judge Seymour entered August 25, 2005 in the class action settlement captioned Curtis v. Norfolk Southern Railway Company, C/A No. 1:05-CV-115-MBS.

"Preceding Class Action Settlement" means the terms of the Proposed Settlement Agreement ("PSA") and Protocol as approved by the Final Order and Judgment of Judge Seymour entered August 25, 2005 in the class action settlement captioned Curtis v. Norfolk Southern Railway Company, C/A No. 1:05-CV-115-MBS.

"Time of Derailment" means 2:38 a.m. Eastern Standard Time on January 6, 2005.

6. The court preliminarily finds for settlement purposes only that the proposed Class and Subclasses described above satisfy the following factors of Rule 23(a) and Rule 23(b)(3):

    a. Numerosity: In this case, several hundred, if not more, individuals and/or entities have asserted claims or have potential claims. Thus, the Rule 23(a)(1) numerosity requirement has been met.

b. <u>Commonality</u>: The derailment was the common event which triggered all of plaintiffs' and proposed Class members' claims. The release of chlorine and consequent chlorine-related personal injuries are consequences of a single incident. The claims asserted herein will all hinge on common questions. These elements would be established by common class-wide proof. They demonstrate common questions sufficient to satisfy Rule 23(a)(2).

c. <u>Typicality</u>: The proposed class representatives' claims arise from the same course of conduct and share the same legal theory, as do the claims of the putative Class members. Furthermore, the proposed class representatives will advance the interests of all class members. The individual class representatives allege, *inter alia*, claims of negligence for personal injuries caused by the release of chlorine from the derailment. The proposed class representatives' claims are typical of those of the proposed Class and satisfy Rule 23(a)(3).

d. <u>Adequacy</u>: The proposed class representatives assert claims representative of the claims of the entire class (i.e., personal injury). As such, even though the claims may not be identical to every claim of every putative Class member, the proposed class representatives can adequately represent the putative Class.

The adequacy factor also considers Class Counsel. In this case, Class Counsel regularly engage in complex litigation similar to the present case and

      have dedicated substantial resources to the prosecution of this matter. The adequacy requirement is satisfied.

  e. <u>Predominance</u>: There is predominance. Common legal and factual issues include: (a) liability for the train collision, derailment, and release of chlorine; and (b) general causation and whether chlorine is capable of causing the injuries and damages claimed. All of these questions constitute a significant part of each individual Plaintiff's and Class member's case. The resolution of these questions will either prove or disprove essential elements of every Class member's claims and will do so on a simultaneous, class-wide basis.

  f. <u>Superiority</u>: A settlement class that will determine the issues common to all Class members and fix compensation for injury is superior to hundreds (or perhaps in excess of a thousand) of trials that would risk disparate results for similarly situated people and entities. The cost of litigation on a case by case basis would be extremely costly for each Plaintiff and the putative Class members, cannibalizing their potential recovery. Piecemeal litigation would also tax the resources of the judiciary.

7. In the interest of clarity, the court reiterates that it makes the findings set forth in Paragraph 6 regarding certification of the proposed Class only on a preliminary basis and only for the purposes of settlement. The court's preliminary findings regarding the class certification requirements of Rule 23(a) and Rule 23(b)(3) are subject to final certification at the fairness hearing.

8. The court appoints the following as Class Representatives: Sara Olvera, Abner Johnson, Lillian D. Witt, Marion Williams, and Phyllis Williams.

9. The court preliminarily approves the Proposed Settlement, together with all of its Exhibits, filed with this court on December 27, 2006, as being fair, reasonable and adequate, entered into in good faith, free of collusion, and within the range of possible judicial approval, such that the terms and conditions shall be considered by the putative members of the Class (as defined in the PSA).

10. The court approves the form and content of the Notice for mailing and the abbreviated Notice for publication, substantially in the forms attached as Exhibit E to the PSA, as satisfying the requirements of Rule 23 and due process.

11. The court directs that Poorman-Douglas Corporation be confirmed to act as the Notice Agent (as defined in the PSA) and directs Poorman-Douglas Corporation to disseminate the Notice in the following manner, which satisfies the requirements of Rule 23 and due process:

    a. Distribution by direct mail of the Notice to every individual that NSRC may be able to reasonably identify based on known instances of Medical Treatment being received, including Qualifying Hospitalizations (as defined in Proposed Settlement Agreement), which mailing shall be placed in the mail no later than <u>January 19, 2007</u>, and which mailing will consist of the following: the Notice, the Proof of Claim Form as defined in the PSA, and the maps as attached to the PSA (i.e., the Maps of Evacuation Zones A and B);

    b. Publication of the abbreviated Notice on two (2) non-consecutive days total over two (2) consecutive weeks in the Aiken Standard, The State (Columbia, South Carolina), The Post & Courier (Charleston, South Carolina), and the Augusta Chronicle (Augusta, Georgia) during the weeks beginning January

22, 2007 and January 29, 2007, and once in El Augustino (in Spanish) in the week beginning January 29, 2007;

c. Distribution by mail of courtesy copies of the Notice to attorneys, other than Class Counsel, known to represent members of the proposed Class;

d. Posting of the abbreviated Notice at the office of the Clerk of Court for the Aiken County Court of Common Pleas, subject to the Clerk's approval, which posting shall be attempted on or before January 22, 2007;

e. Distribution by mail to all law enforcement, fire, emergency services, and other governmental agencies known to have responded to the Incident, requesting that the agency distribute the Notice to members of their organization who were dispatched to Evacuation Zone A any time between January 6, 2005 and January 11, 2005, which mailing shall be placed in the mail no later than January 22, 2007;

f. Development and management of a toll free number, with live operators, to provide information, in English and Spanish, about the Proposed Settlement, with the ability to request copies of the Notice or the PSA for the period from January 22, 2007 up to and including April 19, 2007; and

g. Development and management of a website to provide information and permit the review and downloading of the Notice, PSA, and other forms, for the period from January 22, 2007 up to and including April 19, 2007.

12. The court approves of the appointment of Joseph F. Rice, Esquire of Motley Rice LLC and Terry E. Richardson, Jr., Esquire of Richardson, Patrick, Westbrook and Brickman LLC as Co-

Lead Class Counsel for the Class, who together with Carl L. Solomon Esquire of Gergel Nickles & Solomon, P.A.; Joseph Preston Strom, Jr., Esquire of the Strom Law Firm, LLC; and William Mullins McLeod, Jr., Esquire, of Pierce, Herns, Sloan & McLeod LLC, as additional Class Counsel, are collectively appointed "Class Counsel" for the Class.

13. The court directs that the Honorable A. Victor Rawl be confirmed to act as the Special Master (as defined in the Proposed Settlement) and directs the Honorable A. Victor Rawl to perform the responsibilities of the Special Master as set forth in the PSA. The court further directs that the Special Master be compensated at an hourly rate of $300.00; provided, however, that the Special Master's aggregate fees will ultimately be subject to the court's approval.

14. The court directs that Ms. Georgina Riley be confirmed to act as the Guardian Ad Litem (as defined in the Proposed Settlement) and directs Ms. Georgina Riley to perform the responsibilities of the Guardian Ad Litem as set forth in the PSA, including the submission of a report to the court, Class Counsel, and counsel for NSRC, on the fairness of the proposed settlement to minors and incompetents in advance of the hearing scheduled to address the fairness of the settlement. The court further directs that the Guardian Ad Litem be compensated at an hourly rate of $75.00; provided, however, that the Guardian Ad Litem's aggregate fees will ultimately be subject to the court's approval.

15. The court directs that the Class Settlement Claims Office (as defined in the PSA) receive any Proof of Claim Forms submitted by members of the putative Class pending the final approval of the proposed Class and its certification. The court further directs that pending final approval of the proposed Class and its certification, the Class Settlement Claims Office may (i) communicate with any putative Class members, Class Counsel and other counsel, concerning Class

members' proof of claim forms pursuant to the terms of the PSA and the Claims Processing Procedure Protocol; and (ii) settle with any putative Class members, directly or through Class Counsel or other counsel, if applicable, with regard to all of Class members' claims, whether or not such claims are subject to the Proposed Settlement.

16.     The court directs that Class Counsel may assist members of the putative Class in filing Proof of Claim Forms at the Class Settlement Claims Office in accordance with the PSA and the Protocol pending the final approval of the proposed Class and its certification, and Class Counsel may manage a toll free number to accept and respond to inquiries by members of the putative Class wishing to speak with Class Counsel pending the final approval of the proposed Class and its certification.

17.     The court directs that a hearing be scheduled for April 27, 2007 (the "Fairness Hearing") to assist the court in determining whether certification is appropriate and the Proposed Settlement is fair, reasonable and adequate. Objectors to the Proposed Settlement may be heard at the Fairness Hearing; however, no objector shall be heard and no papers or briefs submitted will be accepted or considered by the court unless on or before March 20, 2007, any such objector (1) has filed with the Clerk of the Court <u>in writing</u> a notice of any such objector's intention to appear personally, or, if such objector intends to appear by counsel, such counsel files a notice of appearance, (2) such objector to any of the applications before the court, submits, personally or by counsel, a written statement describing in full the basis for such objector's opposition, and attaches any supporting documentation and a list of any and all witnesses or experts whom such objector shall present to the court, and (3) has served, on or before March 20, 2007, copies of such notice(s), statement(s), documentation, and list(s) together with copies of any other papers or brief(s) that

objector files with the court or wishes the court to consider at the Fairness Hearing, upon: (i) Joseph F. Rice, Esquire, of Motley Rice LLC, 28 Bridgeside Boulevard, Mount Pleasant, South Carolina 29465, Co-Lead Class Counsel for Plaintiffs; (ii) Terry E. Richardson, Jr., Esquire, of Richardson, Patrick, Westbrook and Brickman LLC, 1730 Jackson Street Barnwell, South Carolina 29812, Co-Lead Class Counsel for Plaintiffs; (iii) Daniel B. White, Esquire, of Gallivan, White & Boyd, P.A., One Liberty Square, 55 Beattie Place, Suite 1200, Greenville, South Carolina 29601, Co-Counsel for Norfolk Southern Railway Company; and (iv) Sheila L. Birnbaum, Esquire, of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Co-Counsel for Norfolk Southern Railway Company.

18.     The court further directs that any putative Class member wishing to exclude himself, herself or itself from the proposed Class, must sign a written request to be excluded containing the information set forth in the Notice and this exclusion request must be mailed to the Notice Agent at the following address "Class Notice Administrator, PO Box 500 Graniteville, SC 29829-0500" postmarked (no metered postmarks) on or before March 20, 2007.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

January 8, 2007