IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

IN RE  GRANITEVILLE TRAIN    x
DERAILMENT         :
------------------------------------------------------ x
SARA OLVERA, ABNER JOHNSON, :
LILLIAN D. WITT, MARION D.
WILLIAMS, and PHYLLIS WILLIAMS, : Civil Action No. 1:06-CV-3597-MBS
individually and on behalf of all others
similarly situated,       :

           :

    Plaintiffs,     :

  vs.         :

NORFOLK SOUTHERN    :
RAILWAY COMPANY,

    Defendant.   :

------------------------------------------------------ x


JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ i

PRELIMINARY STATEMENT .......................................................................... 3

BACKGROUND OF THE CASE ....................................................................... 4

SUMMARY OF PROPOSED CLASS AND SETTLEMENT ........................................ 6

PRELIMINARY APPROVAL, NOTICE, CLASS COUNSEL
ASSISTANCE AT THE CLASS SETTLEMENT CLAIMS OFFICE,
AND SUMMARY OF STATISTICS ................................................................... 8

    A.    Preliminary Approval .......................................................... 8

    B.    Notice ................................................................................ 8

    C.    Class Counsel Assistance at the Class Settlement Claims
          Office ............................................................................... 11

    D.    Summary of Statistics ......................................................... 11

          1.    Premises in Evacuation Zones & Estimate of Class
                  Size .......................................................................... 11

          2.    Opt Outs .................................................................. 12

          3.    Objections ................................................................ 12

ARGUMENT .............................................................................................. 13

I.    The Proposed Settlement Satisfies the Requirements for Approval
Under Rule 23(e) and the Law of This Circuit .................................................. 13

    A.    Legal Standard ................................................................... 13

    B.    The Proposed Settlement Satisfies the Fairness Factors ........... 14

    C.    The Proposed Settlement Satisfies the Adequacy Factors ......... 15

          1.    Strength of Plaintiffs' Case and Difficulties of Proof
                  and Strong Defenses Support Approval of the
                  Proposed Settlement ................................................... 16

2.      Adequacy of Compensation and Subclass
Distinctions Support Approval of the Proposed
Settlement ............................................................................ 18

3.      Complexity, Length and Expense of Further
Litigation Support Approval of the Proposed
Settlement ............................................................................ 21

4.      Response to Proposed Settlement and Degree of
Opposition Support Approval of the Proposed
Settlement ............................................................................ 21

D.      The Guardian Ad Litem's Finding that the Proposed
Settlement is Fair, Adequate and Reasonable for Minors
and Incompetents Favors Approval ......................................... 23

E.      The Evacuation Zone Demarcations Were Fairly and
Adequately Drawn Using Objective and Precise Criteria
Satisfying Rule 23(a) .............................................................. 24

F.      The Proposed Settlement Provides a Mechanism for the
Calculation of Reasonable Class Counsel Fees ........................ 25

II.      The Notice and Notice Plan Satisfy Rule 23(e) and Due Process ........................ 25

CONCLUSION .......................................................................................... 27

## TABLE OF AUTHORITIES

<u>Cases</u>                                                    <u>Page(s)</u>

<u>Bryan v. Pittsburgh Plate Glass Co.</u>, 494 F.2d 799 (3d Cir. 1974)...............................20

<u>Clark v. Experian Information Solutions, Inc.</u>, No. 8:00-1217-22, 2004 WL
    256433 (D.S.C. Jan. 14, 2004).........................................................................18

<u>Clark v. Experian Information Solutions, Inc.</u>, 219 F.R.D. 375 (D.S.C. 2003)............11

<u>Flinn v. FMC Corp.</u>, 528 F.2d 1169 (4th Cir. 1975).......................................11, 13, 14
    19, 20, 21

<u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................20

<u>Grant v. Bethlehem Steel Corp.</u>, 823 F.2d 20 (2d Cir. 1987) ......................................20

<u>Isby v. Bayh</u>, 75 F.3d 1191 (7th Cir. 1996) .................................................................13

<u>In re Jiffy Lube Securities Litigation</u>, 927 F.2d 155 (4th Cir. 1991)......................11, 12,
    13, 14

<u>Loeb Industries, Inc. v. Sumitomo Corp.</u> (In re Copper Antitrust Litigation), 196
    F.R.D. 348 (W.D. Wis. 2000) ...........................................................................22

<u>Maryland ex rel. Sachs v. Mid-Atlantic Toyota Distributors, Inc.</u> (In re Mid-
    Atlantic Toyota Antitrust Litigation), 564 F. Supp. 1379 (D. Md. 1983) ..................12

<u>In re Microstrategy, Inc. Securities Litigation</u>, 150 F. Supp. 2d 896 (E.D. Va.
    2001) ...............................................................................................................21

<u>In re Prudential Securities Inc. Limited Partnerships Litigation</u>, 163 F.R.D. 200
    (S.D.N.Y. 1995)...............................................................................................19

<u>Roman v. ESB Inc.</u>, 550 F.2d 1343 (4th Cir. 1976) ....................................................22

<u>South Carolina National Bank v. Stone</u>, 139 F.R.D. 335 (D.S.C. 1991) ................12, 23

<u>Weinberger v. Kendrick</u>, 698 F.2d 61 (2d Cir. 1982)...................................................13

## STATUTES

Fed. R. Civ. P. 23(e)(1)...............................................................................................11

Fed. R. Civ. P. 23(e)(1)(B) .........................................................................................23

**MISCELLANEOUS**

Manual for Complex Litigation (Fourth) §§ 21.61, 21.62 (2004) ................................................12

COME NOW Plaintiffs, Sara Olvera, Abner Johnson, Lillian D. Witt, Marion Williams, and Phyllis Williams, individually and on behalf of all others similarly situated ("Plaintiffs") and defendant Norfolk Southern Railway Company ("NSRC"), by their undersigned counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to jointly request that this Court enter an Order and Judgment finally approving the settlement of the proposed class as set forth in the Proposed Settlement Agreement, dated December 22, 2006, on file with the Court as Exhibit A to the Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters, filed on December 27, 2006, together with all of its Exhibits attached thereto (the "PSA" or the "Proposed Settlement").[1] In support of this Motion, to which the Court gave preliminary approval in an order dated January 8, 2007, Plaintiffs, Class Counsel and NSRC (collectively the "Parties") state the following:

## PRELIMINARY STATEMENT

The Court should finally approve the Proposed Settlement because it is fair, adequate and reasonable under the law of this Circuit. Indeed, no person who remains a member of the Class has objected to the fairness, adequacy and reasonableness of the Proposed Settlement.[2]

First, the Proposed Settlement is fair because it is the result of intense arms' length bargaining engaged in on behalf of the Class by competent Class Counsel who were fully informed of the facts and circumstances of the case. Second, balancing

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the PSA.

[2] For the Court's convenience and for ease of reference, the Class definition and exclusions to the Class are set forth in Exhibit A, attached hereto.

the adequacy factors demonstrates that the Proposed Settlement is more than adequate:  (i) the strength of Plaintiffs' claims balanced against any difficulties Plaintiffs might face on the merits; (ii) the compensation under the Proposed Settlement provides not only the best estimate of Plaintiffs' recoverable damages and losses, but it provides fair compensation for the injuries and damages sustained in this case based upon medically supported determinations and the large number of class members who filed claims selecting the Accelerated Implementation Option of the Settlement regardless of the Court's determination of fairness; and (iii) the time, length and complexity of litigating Plaintiffs' claims as well as the favorable response of putative Class members to the Proposed Settlement favors class resolution and indicates the adequacy of the Proposed Settlement.  Third, no person who remains in the Class objects to the fairness, adequacy and reasonableness of the Proposed Settlement.  Finally, the Notice and notice plan as carried out satisfy Rule 23(e) and due process.

## BACKGROUND OF THE CASE

This case arises from a train collision and derailment that occurred on January 6, 2005, involving a NSRC train at Graniteville, South Carolina and a subsequent release of chlorine, emergency response, clean-up, shelter-in-place, and evacuation.  As part of the emergency response to the derailment, public officials ordered an evacuation of approximately 5,400 people within a certain area around the derailment (Affidavit of Sheriff, Ex. B).  In a prior class action settlement, approved by this Court on August 25, 2005, NSRC settled numerous claims relating to property damages, evacuation-related expenses, and certain minor personal injuries.  See  Curtis v. Norfolk Southern Railway Co., Co. 1:05-115-24.  Plaintiffs filed this case on behalf of themselves and others

4

similarly situated seeking recovery of personal injury damages due to exposure to chlorine and related expenses and losses.

Beginning in the fall of 2005, counsel for Plaintiffs, Joseph F. Rice, Esq., of Motley Rice LLC, and Terry E. Richardson, Esq., of Richardson, Patrick, Westbrook and Brickman LLC ("Co-Lead Class Counsel"), and counsel for NSRC have engaged in extensive, arms-length negotiations regarding the remaining issues presented in this litigation and the possible terms of a settlement of the remaining claims asserted by Plaintiffs – namely, settlement of the claims relating to Plaintiffs' claims for personal injuries, loss of consortium, and other damages allegedly resulting from exposure to chlorine from the derailment and release of chlorine. After over a year of nearly continuous arms-length negotiations, which included numerous conference calls and in-person negotiating sessions in South Carolina, Washington, D.C., and New York City, and after analyzing the relevant facts and applicable law, taking into account the burdens, risks, uncertainties, time, and expense of litigation, as well as the merits of the terms and procedures for a fair, cost-effective and a sure method of resolving certain of the claims of the proposed Class (as defined in the PSA), Class Counsel and NSRC arrived at the settlement set forth in the PSA. (See Affidavit of Joseph F. Rice. Esq. ("Rice Aff") Ex. C).

Class Counsel has concluded that the settlement set forth in the PSA is fair, reasonable, adequate and in the best interests of the proposed Class. Likewise, NSRC has concluded that resolving the claims settled under the terms of the Proposed Settlement is desirable to reduce the time, risk and expense of defending multiple claims and multiple party litigation, and to resolve finally and completely the personal injury, loss of

consortium, and other damages of the proposed class allegedly as a result of exposure to chlorine from the derailment and release of chlorine.

## SUMMARY OF PROPOSED CLASS AND SETTLEMENT

While the terms of the Proposed Settlement are set forth more fully in the PSA, for the Court's convenience, the important terms and features of the Proposed Settlement are summarized here.

The Proposed Settlement provides a compensation and reimbursement scheme for those in one of 5[3] subclasses who received Medical Treatment (as defined in the PSA) for objective physical injuries caused by exposure to chlorine from the Incident within certain distance and time frame parameters. Loss of consortium claims are also included in the settlement. A member of the Class also will receive reimbursement for proven medical expenses that were not previously paid and were necessary and related to the Incident arising from injuries for which a class member receives compensation under the Settlement, and out-of-pocket wage losses that had not been previously paid. Compensation of subclasses 1-4 is a flat amount for each subclass based on (1) the lack of an injury sufficiently serious as to require in-patient hospital treatment, (2) the distance from the Place of the Derailment, and (3) the following the derailment time in which Medical Treatment was received.

For members of Subclass 5, whose Medical Treatment included in-patient care in a hospital for at least one overnight hospitalization, compensation is based on the time period of the hospitalization as a surrogate measure of the seriousness of the injuries.

---

[3] Originally, 6 subclasses were agreed upon and were subject to the Court's Preliminary Approval Order. However, the proof of claim filing deadline has passed and there are no known members of Subclass 6. Therefore, the parties are not seeking final certification of Subclass 6. See Plaintiffs' Motion For Final Certification of a Class For Purposes of Settlement, at 1.

This compensation scheme includes other features to ensure that each member of this Subclass receives compensation that is both fair and reasonable.  Members of Subclass 5 have the potential of qualifying for additional amounts for (a) persistent pulmonary impairment caused by exposure to chlorine from the Incident, and/or certain chlorine-related non-pulmonary impairment, and/or certain non-chlorine related hearing loss due to the derailment, and/or (b) for psychiatric or psychological impairment due to their physical injuries from the Incident and for which they are receiving compensation under the Settlement.  A separate loss of consortium award of 10% is calculated using the total base amount (hospitalization matrix amount plus add-on amounts) of each member of the Subclass.

The Proposed Settlement also provides for a claims processing procedure with built-in process protections for the putative Class.  The proposed Class had ample time to fill out and submit Proof of Claim Forms (until June 16, 2007).  What is more, Class Counsel has been available at the Class Settlement Claims Office to assist members of the putative Class with filling-out their claim submissions, if they so requested.  Once a Class member's submission has been evaluated and processed, the Class Settlement Claims Office will serve a claim response report, outlining the relief to be afforded on the Class member's claims.  The Class member may accept the proposed relief, choose to meet and confer with the Class Settlement Claims Office to discuss the proposed relief, or appeal the proposed relief to the neutral Special Master. As of June 14, 2007, 399 claims had been received by the claims office, 370 of which had been submitted to NSRC. NSRC has made offers of settlement under the PSA to 160 claimants for a total of

$9,700,117.73. Pursuant to the Accelerated Implementation Option of the PSA, 94 such claimants have already been paid a total of $3,521,223.18.

## PRELIMINARY APPROVAL, NOTICE, CLASS COUNSEL ASSISTANCE AT THE CLASS SETTLEMENT CLAIMS OFFICE, AND SUMMARY OF STATISTICS

A.   Preliminary Approval

On or about December 27, 2006, the Plaintiffs moved the Court to preliminarily certify the proposed Class for settlement purposes, and the Parties jointly moved the Court to approve the Proposed Settlement. The Court held a hearing to determine whether to preliminary certify the Class, preliminarily approve the Proposed Settlement, and give notice to the Class. On January 8, 2007, the Court entered an order that, among other things, preliminarily certified the Class for settlement purposes, preliminarily approved the Proposed Settlement as fair, adequate, and reasonable, and directed notice be given to the putative Class of the Proposed Settlement.

B.   Notice

As directed by the Court, Epiq Legal Noticing (formerly known as Poorman-Douglas Corporation) (the "Notice Agent") oversaw and executed the multi-pronged notice plan, which consisted of direct mailing, publication in local papers, and administration of a toll-free information number and settlement website. (See Affidavit of Cameron Azari ("Azari Aff."), Ex. D). On two (2) days over two (2) consecutive weeks (January 24 and January 29, 2007), the Aiken Standard, Augusta Chronicle, The State (Columbia), and the Post & Courier (Charleston) published the abbreviated Notice. (See Affidavit of Dorianna Phillips, Attachment Four of Exhibit D). The local Spanish language paper, El Augustino, published the abbreviated notice on February 1, 2007. (Id.)

In addition, the parties undertook direct mailing of Notice Packets[4] to a list of 829 addresses of people who are believed to have sought medical treatment after the Incident. In addition, the Notice was mailed to 112 federal, state, and local emergency responders.[5] (Azari Aff., Ex. D). Since January 22, 2007, the Notice Agent has also administered and overseen a toll free number with an automated settlement information system, available in both English and Spanish. (Azari Aff., Ex. D). As of June 11 2007, the toll free line has received 158 phone calls totaling 539 minutes (Id.). Since January 22, 2007, the Notice Agent has also managed the settlement website that provides information regarding the Proposed Settlement and permits the downloading and review of settlement documents. (Id.). As of June 11, 2007, the website has registered 447 visitor sessions. (Id.).

The Notice Agent had the abbreviated Notice posted at the office of the Clerk of Court of the Aiken County Court of Common Pleas since January 19, 2007. (Id.). Pursuant to the Court's directive, the Notice Agent mailed courtesy copies of the Notice Packets to all attorneys, other than Class Counsel, known to represent members of the proposed Class and to known lienholders and subrogees. (Id.).

The notice plan also called for mailing of courtesy copies of the Notice to attorneys, other than Class Counsel, known to represent members of the putative Class and to all law enforcement, fire, emergency services, and other governmental agencies

---

[4] A "Notice Packet" consisted of the Notice, the Proof of Claim Forms with an instructions and important information page, and the maps as attached to the PSA (i.e., the Maps of Evacuation Areas and Length in Days of Mandatory Evacuation Zones and the Map of the Inner Zone).

[5] A number of opt-outs were received from members of one of the first responder organizations to which notice was provided, thus further demonstrating the effectiveness of the Notice Plan because the notice provided to the organization was forwarded to the members of that organization that responded to the Incident.

known to have responded to the Incident, requesting that the agency distribute the Notice to members of their organization who were dispatched to Evacuation Zone A any time between January 6, 2005 and January 11, 2005. Finally, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, the Notice Agent mailed on December 28, 2006 the required documentation to the Attorney General of the United States and to the Attorneys General of every state, including the District of Columbia, and all commonwealths, territories, and possessions of the United States. Each CAFA notice included the Complaint, Summons, Rule 26 Interrogatory Answers and the PSA with protocol and exhibits. The CAFA notice to the United States, Georgia, and South Carolina Attorneys General also included the list of Agency First Responders who received the Class Notice. The CAFA notices to the Attorneys General of Georgia and South Carolina further included the names and addresses of individual potential class members who received the Class Notice. (Azari Aff., Ex. D).

On or about April 6, 2007, the Court extended the deadlines for opt-outs, objections, and the filing of proof of claim forms. In addition, the Court postponed the date of the fairness hearing. Accordingly, the court approved, and the parties executed a supplemental notice plan to apprise putative Class members of such changes. The flyer notice of the new deadlines also appeared on April 11, 2007 in the Aiken Standard, Augusta Chronicle, The State, and the Post & Courier. (See Azari Aff., Ex. D). The flyer notice also appeared in the local Spanish newspaper, El Augustino, on April 16, 2007. (Id.) The Notice Agent had the extension flyer posted at the office of the Clerk of Court of the Aiken County Court of Common Pleas. (Id.) The Notice Agent also updated the settlement website and VRU to reflect the new deadlines, and mailed notice

to the Attorney General of the United States and the Attorneys General of every state pursuant to CAFA.  (Id.).  In addition, courtesy copies of the flyer were mailed to attorneys other than Class Counsel known to represent members of the putative class.  In its April 6, 2007 Order, the Court held that the manner in which notice was effectuated, with the addition of the deadline extensions, satisfied the requirements of Rule 23(e).

Accordingly, the Notice and notice plan were the best practicable and were comprehensive and far-reaching.  By any measure they met and exceeded all the requirement of due process and Rule 23.  (Id.)

C.    Class Counsel Assistance at the Class Settlement Claims Office

Since January 18, 2007, Class Counsel, as directed and authorized by the Court, has been available to assist members of the proposed Class at the Class Settlement Claims Office.  (Affidavit of Carl L. Solomon ("Solomon Aff."), Ex. E).  As of June 18, 2007, Class Counsel has dedicated 1,422.75 hours of attorney time and 2,543.50 hours of support staff time to the operation of the claims office.  This time was spent, *inter alia*, advising claimants regarding class the definition, claims filing protocol, and remedies pursuant to the PSA and deadlines, assisting claimants in filing claim forms, collecting medical records and bills in support of claims, and assisting claimants with other issues related to the claims process.  (Id.).  Additionally, the claims center will continue to advise claimants and assist them in receiving compensation under the PSA.  (Id.).

D.    Summary of Statistics

1.    Premises in Evacuation Zones & Estimate of Class Size

Based upon a review of direct medical billing from health care providers following the Incident, the parties believe that there are approximately 829 individuals who received medical treatment following the derailment.  In addition, the parties believe

11

that workers from approximately 112 emergency response agencies may have been present within the Evacuation Zones following the Incident. Though medical billing or mere employment with a particular emergency response agency does not necessarily equate to class membership, out of an abundance of caution, the parties mailed the class Notice to all such individuals and agencies.

>   2.    Opt Outs

As of the May 29, 2007 deadline to request exclusion from the proposed Class, 627 individuals have validly requested exclusion.[6] (Azari Aff., Ex. D). Of these, 536, or over 85%, are represented by Douglas Schmidt, Esq.[7] However, of the 627 opt outs, counsel believe that 511 reside *outside* of the Evacuation Zones and may therefore not be members of the Class to begin with. (Id.).

>   3.    Objections

As of the May 29, 2007 deadline to object to the Proposed Class, no putative Class members had filed an objection to the Proposed Settlement.[8]

---

[6] As of May 29, 2007, the Notice Agent received 688 requests for exclusion, of which 627 were valid, 28 were invalid, and 33 were duplicates. Of the 28 invalid opt outs, 4 were invalid because they were not signed by the individual putative Class member as required by the Notice, 1 was invalid because it was not postmarked by the May 29, 2007 deadline, 17 were voided and 6 were withdrawn. (Azari Aff., Ex. D).

[7] Of the 536 Schmidt opt-outs, 474 were not on the mailing list to which the full class notice was directly mailed. This provides further support for the adequacy of the Notice Plan insofar as it is clear that information concerning the settlement reached large numbers of potential class members that were not on the direct mailing list.

[8] On March 27, 2007, one plaintiff moved to extend the deadline for opt-outs. This motion did not purport to articulate an objection to the proposed Settlement. In any event, this motion was withdrawn and is now moot. As noted above, the deadlines for opt-outs, objections, the filing of proof of claim forms were subsequently extended by agreement and Court order on April 6, 2007.

12

## ARGUMENT

I.     The Proposed Settlement Satisfies the Requirements for Approval
       Under Rule 23(e) and the Law of This Circuit

       A.     Legal Standard

              Rule 23(e) provides:

       (1) (A)  The court must approve any settlement, voluntary dismissal, or
       compromise of the claims, issues, or defenses of a certified class.

       (B) The court must direct notice in a reasonable manner to all class
       members who would be bound by a proposed settlement, voluntary
       dismissal, or compromise.

       (C) The court may approve a settlement, voluntary dismissal, or
       compromise that would bind class members only after a hearing and on
       finding that the settlement, voluntary dismissal, or compromise is fair,
       reasonable, and adequate.

Fed. R. Civ. P. 23(e)(1). Judicial approval is necessary to ensure that the rights of absent

class members are adequately protected.  See In re Jiffy Lube Sec. Litig., 927 F.2d 155,

158 (4th Cir. 1991); Clark v. Experian Info. Solutions, Inc., 219 F.R.D. 375, 378 (D.S.C.

2003).

              In  determining  whether  a  settlement  of  disputed  claims  should  be

approved,  the  Court  asks  whether  the  Proposed  Settlement  is  fair,  adequate  and

reasonable, under the well-established standards set forth by the Fourth Circuit in Flinn v.

FMC Corp., 528 F.2d 1169 (4th Cir. 1975), and its progeny, In re Jiffy Lube Securities

Litigation, 927 F.2d 155 (4th Cir. 1991).

              As explained below, the terms of the Proposed Settlement are clearly fair,

adequate and reasonable for final approval purposes.

13

B.     <u>The Proposed Settlement Satisfies the Fairness Factors</u>

The fairness factors concern whether there has been arms' length bargaining. <u>See</u> <u>Maryland ex rel. Sachs v. Mid-Atlantic Toyota Distribs., Inc.</u> (In re Mid-Atlantic Toyota Antitrust Litig.), 564 F. Supp. 1379, 1383, 1385 (D. Md. 1983); <u>S.C. Nat'l Bank v. Stone</u>, 139 F.R.D. 335, 339 (D.S.C. 1991). Courts consider (i) the posture of the case at the time of settlement, (ii) the extent of discovery that has been conducted, (iii) the circumstances surrounding the negotiations, and (iv) the experience of counsel. <u>Jiffy Lube</u>, 927 F.2d at 159; <u>S.C. Nat'l Bank</u>, 139 F.R.D. at 339.

The fairness factors, as applied to the present case, clearly favor approval of the Proposed Settlement. A proposed class action settlement is considered presumptively fair where, as here, there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations. <u>See</u> <u>S.C. Nat'l Bank</u>, 139 F.R.D. at 339 ("In assessing the fairness and adequacy of a proposed settlement, 'there is a strong initial presumption that the compromise is fair and reasonable.'" (citation omitted)); <u>see also</u> <u>Manual for Complex Litigation, Fourth</u> §§ 21.61, 21.62 (2004) (hereinafter, "<u>Manual</u>"). Settlement negotiations here were difficult, complex, protracted and adversarial.

Second, Class Counsel was fully and sufficiently informed to vigorously advocate on the putative Class' behalf. In addition to the formal discovery that has commenced and is continuing, Class Counsel engaged in extensive factual investigation and legal analysis in order to obtain sufficient information to weigh the benefits of the Proposed Settlement against the risks of continued litigation. <u>Cf.</u> <u>In re Jiffy Lube</u>, 927 F.2d at 159 (noting that fairness factors satisfied notwithstanding early stage of litigation at which settlement reached). Class Counsel engaged in substantial and extensive

14

investigation, relying on expert evidence to determine the extent of the proposed Class' personal injury damages. (Rice Aff., Ex. C). Class Counsel also conducted in-depth legal analyses to ascertain the strengths and weakness of Plaintiffs claims under South Carolina and applicable law. (Id.). It is on the basis of its extensive investigation and analysis that Class Counsel, who has substantial experience in prosecuting and negotiating the settlement of mass-accident class actions,[9] recommends approval of the Proposed Settlement as in the best interest of the putative Class. See Isby v. Bayh, 75 F.3d 1191, 1200 (7th Cir. 1996) (noting that the court is "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate"); see also Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982) (noting that absent fraud, collusion or the like, courts should be hesitant about substituting their own judgment for that of counsel). In addition, all the attorneys who are Class Counsel support this settlement as fair, adequate and reasonable.[10]

C.    The Proposed Settlement Satisfies the Adequacy Factors

In addition to the fairness factors, courts in this Circuit weigh the adequacy factors articulated in Flinn and Jiffy Lube to determine whether to approve a class settlement. The adequacy factors are (i) the relative strength of plaintiffs' case on the merits; (ii) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (iii) the anticipated duration and expense of additional litigation; (iv) the solvency of the defendants and the likelihood of recovery

---

[9]    Both Messrs. Rice and Richardson were Co-Lead Class Counsel in the prior settlement relating to the Incident, and accordingly, the Court received their firm resumes at that time and is fully familiar with their abilities.

[10]    See List of Class Counsel, Ex. F.

of a litigated judgment; and (v) the degree of opposition to the settlement.  See In re Jiffy Lube, 927 F.2d at 159; Flinn, 528 F.2d at 1173-74.[11]  When considering the adequacy of the settlement, courts are "'cautioned not to turn the settlement hearing into a trial or a rehearsal of a trial.'"  Flinn 528 F.2d at 1172 n.4 (citation omitted).  Counsel respectfully submit that a weighing of the adequacy factors here demonstrates that the Proposed Settlement is certainly adequate for approval.

    1.    Strength of Plaintiffs' Case and Difficulties of Proof and Strong Defenses Support Approval of the Proposed Settlement

The strength of Plaintiffs' case balanced against the relatively assured compensation under the Proposed Settlement weighs in favor of the adequacy of the compromise.  Plaintiffs' ability to prevail on the merits of this litigation, like all contested matters, is uncertain.  The Proposed Settlement, however, confers relatively assured and substantial benefits for Class members' personal injury, loss of consortium, and other damages as a result of exposure to chlorine from the derailment and release of chlorine. (See Exh. G, Affidavit of Steven M. Koenig, M.D. submitted by Class Counsel in this and the Preceding Class Settlement, and Exh H, Affidavit of Alan R. Leff, M.D. submitted by NSRC in this and the Preceding Class Settlement; see also Exh. I, Affidavit of Jay Gandy, Ph.D. submitted by NSRC in this and the Preceding Class Settlement (regarding results of air monitoring conducted on January 6, 2005.)

Were Plaintiffs to pursue their claims in the courts, they would be required to prove their claims and elements of damages.  Plaintiffs assert claims of personal injury due to exposure to chlorine.  (Compl. ¶ 15-16).  The symptoms of chlorine exposure can be produced by other causes.  Moreover, in certain instances, proving exposure to

---

[11]    The solvency of the defendant is not relevant to the present case.

chlorine from the derailment – and medical causation – might be an obstacle for some plaintiffs. Proof of chlorine-related personal injury requires expert medical testimony, adding to the complexity of proving Plaintiffs' personal injury claims. On the other hand, the Proposed Settlement simplifies the proof necessary for Plaintiffs to recover on their chlorine-related personal injury claims.

Plaintiffs' claims are also ripe for settlement. It would be anticipated that if each of these claims were litigated, there would be a substantial delay before any plaintiff could recover damages. The claims processing procedures under the PSA, however, correlate adequately with the claims of damages and losses asserted by Plaintiffs: It is Class Counsel's opinion that the level of compensation provided for under the PSA is consistent with Class Counsel's best estimate of the damages and losses relating to the Plaintiffs' claims that are to be settled. The PSA essentially provides for fair and adequate compensation on Plaintiffs' personal injury, loss of consortium, and other losses. Under the PSA, NSRC will compensate Plaintiffs for such alleged injuries and provide reimbursement for Incident-related medical expenses and wages lost due to their physical injuries.[12]

---

[12] In addition, the parties reached an agreement to permit workers' compensation final settlement amounts ("clinchers") to be considered part of the workers' compensation "lien" under the Proposed Settlement Agreement. As such, the term "lien" in Sections 2.1(l) and 13.1 of the PSA, shall, for the purposes of this agreement only, include the amount of any settlement in full ("clincher") of any such Class Member's Workers Compensation claim arising from the injuries by which a claimant is a Class Member in this class settlement, provided that: (1) the Class Member does not opt-out of the Class – or rescinds in writing a previously filed opt-out – and mails it to the Notice Agent postmarked on or before the extended opt-out deadline of May 29, 2007; (2) the Class Member's workers' compensation final settlement in full includes a release of future compensation and medical benefits; (3) the workers' compensation final settlement in full is consummated before the deadline for the filing of a Proof of Claim Form; and (4) the Class Member meets all other requirements for payment under the Class and the Effective Date of this Class Action Settlement as defined in the PSA is reached.

Plaintiffs would have to meet the legal and factual proof of injury hurdles with regard to proving their personal injury claims. Ultimately, notwithstanding the burdens associated with proving their personal injury claims and damages, the Proposed Settlement provides assured and fair compensation for Plaintiffs' personal injuries that may have resulted from exposure to chlorine from the Incident.

Were Plaintiffs to prosecute the claims covered under the Proposed Settlement, they would be required to meet the burdens of proving their personal injury claims and damages, which would be costly, time consuming, and subject to the risks and uncertainties of litigation. The Proposed Settlement, on the other hand, offers Plaintiffs assured, prompt and fair compensation. The difficulties of proof and strength of defenses balanced against the reasonable and prompt compensation scheme offered by the Proposed Settlement demonstrates the settlement's fairness, adequacy and reasonableness.

2.    Adequacy of Compensation and Subclass Distinctions
      Support Approval of the Proposed Settlement

The compensation afforded under the Proposed Settlement correlates adequately with the claims of damages and losses asserted by Plaintiffs. It is Class Counsel's opinion that the level of compensation provided for under the PSA is consistent with Class Counsel's best estimate of the damages and losses relating to the Plaintiffs' claims that are to be settled. The PSA essentially provides for fair and adequate compensation on Plaintiffs' personal injury, loss of consortium, and other losses. Under the PSA, NSRC will compensate Plaintiffs for such alleged injuries and provide reimbursement for Incident-related medical expenses and wages lost due to their physical injuries.

The Proposed Settlement also makes adequate distinctions between different claims within the same class in order to arrive at adequate compensation amounts that reasonably correlate with the characteristics of a particular Class member's claims. These distinctions between the subclasses and the criteria for possible additional awards are based upon distinctions that have support in the medical literature for injuries related to exposure to chlorine and other pulmonary injuries and for trauma injuries. (Exh. J., Affidavit of Phillip Witorsch, M.D., submitted by NSRC); (Exh. K., Affidavit of James A. Barker, M.D., submitted by Class Counsel); (Exh. L., Affidavit of Lawrence H. Bergmann, Ph.D., submitted by Class Counsel). For example, members of Subclass 1 – who were within a one-mile radius of the site of the Incident – receive $20,000 to compensate them for their injuries. Members of Subclass 2 – who were farther from the site of derailment than members of Subclass 1 – receive $11,250. In addition, the PSA draws distinctions based upon the timeframe in which class members sought and received medical treatment, with those class members seeking treatment within the first month following the Incident receiving higher compensation. Moreover, members of Subclass 5 – whose Incident-related injuries required hospitalization – receive compensation tied to the number of days spent in the hospital. These class members can receive additional compensation based on a list of factors designed to compensate them for diagnosed permanent or persistent Incident-related pulmonary impairment or psychological or psychiatric impairment. Variations in allocations between and among class members within a single class based on the varying characteristics of respective claims are well accepted by the courts. See, e.g., Curtiss-Wright Corp. v. Helfand, 687 F.2d 171, 174-75 (7th Cir. 1982) (allocation of fund was governed by traditional equity rules and could be

resolved by weighing relative deservedness of class members based on the facts of the cases); see also Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1372-73, 1377-78 (9th Cir. 1993) (affirming approval of settlement that allocated certain claims four times the weight of other claims).

Not only does the Proposed Settlement make Plaintiffs whole, it also affords the additional and significant benefit of defraying transaction costs.  NSRC is paying the costs of the notice implementation and claims processing (other than Class Counsel's costs), including the Special Master fees and the Guardian Ad Litem's fees. NSRC is also paying Class Counsel fees subject to the Court's approval, based on the amounts paid to Class members.  The fees and costs shouldered by NSRC represent a considerable benefit for the Class members, further demonstrating the adequacy and fairness of the Proposed Settlement.

Finally, to the extent that any Class member disagrees with the compensation levels under the Proposed Settlement, the Court should consider the ample opportunity that all Class members have had to not only weigh the terms of and compensation levels afforded under the PSA, but to opt out of the Class.  The opportunity to opt out of a class settlement after being apprised of its terms is an indication of fairness and adequacy.  See Clark v. Experian Info. Solutions, Inc., No. 8:00-1217-22, 2004 WL 256433, at *12 (D. S.C. Jan. 14, 2004) (rejecting class members' objection to terms of class settlement because the objectors should have opted out).  All putative Class members have had nearly five months to weigh and consider the compensation under the PSA.  They have had ample time to decide whether it was in their best interest to opt out

of the Class. The opportunity provided here is indicative of the fairness and adequacy of the Proposed Settlement.

3.    Complexity, Length and Expense of Further
       Litigation Support Approval of the Proposed Settlement

The complexity, length, and expense of further litigation weighs heavily in favor of the Proposed Settlement. There is no doubt that the time and expense of continuing the litigation would be substantial. Transactional costs of continuing the action in the courts would reduce whatever judgment Plaintiffs could recover through litigation. Avoiding that unnecessary and unwarranted expenditure of resources and time would benefit all parties and the Court. See In re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 210 (S.D.N.Y. 1995). The Proposed Settlement provides an expeditious route to recovery for the Class that heavily outweighs the cost, uncertainty, and various other risks associated with continued litigation.

4.    Response to Proposed Settlement and Degree of Opposition
       Support Approval of the Proposed Settlement

No person who remains a Class member has objected to the fairness, adequacy and reasonableness of the Proposed Settlement. Thus, there is a 0% objection rate when it comes to the settlement terms. It is axiomatic, therefore, that a balancing of the positive response from members of the Class to the Proposed Settlement against the utter absence of opposition from the Class, militates in favor of approval. Flinn, 528 F.2d at 1173.

627 potential members of the Class have validly chosen to opt out of the Class. (Azari Aff., Ex. D). It is important to note that the lion's share of these opt outs, indeed 536 or over 85%, were submitted by potential class members represented by a single attorney, Douglas Schmidt, Esq. Most of those 536 opt-outs came from

21

individuals who were not on the list of recipients of the mailed Notice.  Thus, it is possible that many such opt-outs were submitted by individuals who were not members of the Settlement Class in the first place.  In any event, merely opting out of a class settlement says nothing concerning the settlement's fairness.  See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (implying that one cannot necessarily assume that opt outs elected to opt because they believed terms of settlement to be unfair).

No class members have objected to the fairness of the Settlement.  Courts have approved class settlements in which up to nearly 40% of a class have objected. Grant v. Bethlehem Steel Corp., 823 F.2d 20, 23 (2d Cir. 1987) (upholding class settlement notwithstanding 36% of class objecting and also noting that even if greater than 50% of class objected still not grounds for denying approval of settlement); see also Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799, 803 (3d Cir. 1974) (upholding class settlement where 20% of the class objected and also noting that settlement is not unfair or unreasonable simply because large number of class members oppose it).  This is consistent with the Flinn court's admonition in this Circuit that a settlement "is not unfair or unreasonable simply because a large number of class members oppose it." Flinn, 528 F.2d at 1173.  Here, no named Class member has objected.  This fact alone is a strong indication of the fairness and adequacy of the Proposed Settlement, and it compels approval.

Moreover, not all of the remaining Class members are "silently" acquiescent members of the Class.  Rather, a significant portion of the putative Class has already shown their approval of the Proposed Settlement by affirmatively seeking-out Class Counsel's assistance in  preparing Proof of Claim Forms for settlement, filing

22

claims, and electing the Accelerated Implementation Option under the terms of the PSA. Indeed, as of June 18, 2007, 94 claimants have been paid a total of $3,521,223.18 pursuant to the Accelerated Implementation Clause of the PSA. In addition, NSRC has made 160 offers of payment to claimants under the PSA totaling $9,700,117.73.[13] To date Class Counsel has dedicated 1,422.75 hours of attorney time and 2,643.5 hours of support staff time to the operation of the claims center. (Solomon Aff., Ex. E). The effective absence of objectors weighed against the large number of Class members who have affirmatively approved of the Proposed Settlement by submitting Proof of Claim Forms "strongly compel[s] a finding of adequacy." In re Microstrategy, Inc. Sec. Litig., 150 F. Supp. 2d 896, 906 (E.D. Va. 2001); see also Flinn, 528 F. 2d at 1173 ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court.").

D.    The Guardian Ad Litem's Finding that the Proposed Settlement is Fair, Adequate and Reasonable for Minors and Incompetents Favors Approval

Guardian Ad Litem Georgina Riley's finding that the Proposed Settlement is fair, adequate and reasonable for minors and incompetents bolsters the settlement's fairness and adequacy. (See Report of Guardian Ad Litem Georgina Riley, Ex. M). In particular, the Guardian Ad Litem Riley has found that the terms of the Proposed Settlement are fair, adequate, and reasonable for minors and that Class Counsel have implemented procedures to ensure minors received fair settlements under the Proposed Settlement. (Id.).[14]

---

[13] Updated figures will be provided at the Fairness Hearing.

[14] The Guardian Ad Litem also noted that Class Counsel made other efforts to reach out to Spanish-speaking Class members as well as home-bound members of the Class.

E.    The Evacuation Zone Demarcations Were Fairly and Adequately Drawn
      Using Objective and Precise Criteria Satisfying Rule 23(a)

The Parties drew the Evacuation Zones in a fair and adequate manner, using objective and precise criteria which satisfy Rule 23(a). The rule requires only that a class definition be precise, objective and ascertainable. See Manual, supra, § 21.222; Loeb Indus., Inc. v. Sumitomo Corp. (In re Copper Antitrust Litig.), 196 F.R.D. 348, 353 (W.D. Wis. 2000) (noting that a class definition must be precise, objective and presently ascertainable); see also Roman v. ESB Inc., 550 F.2d 1343, 1348 (4th Cir. 1976) (noting that in order to determine whether a class is proper the court must determine what it includes which is a fact determination based on the circumstances of each case). The Parties developed the boundaries of the Evacuation Zones from precise and objective criteria. Class Counsel and NSRC relied on the affidavit of Mike Hunt, the Sheriff of Aiken County, to craft the geographic areas of the Class. Sheriff Hunt, by affidavit, affirmed which areas were under mandatory evacuation and the length of time people were subject to evacuation in each area. (Sheriff Aff., Ex. B). Experts conducted inspections and testing at hundreds of locations to determine the presence of chlorine. The Parties based the boundaries of the Inner Zone on these inspections and tests.[15] In short, the methodology used to determine the Evacuation Zones is both precise and objective, satisfying Rule 23(a) and resulting in an ascertainable class definition, which is fair, adequate and reasonable.

---

[15] While air monitoring was not used to craft the Evacuation Zones, air monitoring was commenced around the area of the derailment at approximately 9:00 a.m. on January 6, 2005. The U.S. EPA, U.S. Coast Guard, and CTEH conducted additional air monitoring at different perimeter locations from the derailment site.

F.    The Proposed Settlement Provides a Mechanism for the
Calculation of Reasonable Class Counsel Fees

Class Counsel will apply for Class Counsel fees through a separate petition, which will also demonstrate the reasonableness of the fee under the circumstances.  It should be noted, here, however, that the formula set forth in the PSA for the calculation of fees is reasonable.  The fee is calculated as a reasonable percentage of the actual benefit of the class settlement to the Class.  In addition, the Class has been duly noticed of the fee formula and no member of the Class has objected to it.  Moreover, Class Counsel fees do not in any way diminish the compensation amounts available to the Class under the PSA.

II.    The Notice and Notice Plan Satisfy Rule 23(e) and Due Process

The Notice and the notice plan as carried out satisfy Rule 23(e) and due process.  Under Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement."  Fed. R. Civ. P. 23(e)(1)(B).  The notice must be "the best practicable notice under the circumstances" and must satisfy due process.  S.C. Nat'l Bank v. Stone, 139 F.R.D. 335, 338 (D.S.C. 1991).

This Court has already held that the Notice and the notice plan as set forth in its January 8, 2007 Order, is the best practicable under the circumstances, satisfying Rule 23(e) and due process.  Moreover, the Court has reconfirmed the sufficiency of the Notice and notice plan in one subsequent order, while adding court-ordered supplemental procedures to address an extension of certain deadlines and a postponement of the Fairness Hearing.  (See Order, dated April 6, 2007).  The Court has held that the Notice

and the notice plan, with the extension, satisfied Rule 23(e), due process and remained

the best practicable notice.

Indeed, the multi-pronged nature of the notice and high level of public

response demonstrates that notice of the proposed settlement has successfully reached the

putative Class:

> (a) the Notice appeared in the Aiken Standard, Augusta
> Chronicle, The State (Columbia), and the Post & Courier
> (Charleston) during the weeks of January 22, 2007 and January
> 29, 2007 and once during the week of January 29, 2007 in El
> Augustino, the local Spanish language weekly; (Azari Aff., Ex.
> D)

> (b) the toll-free voice recorded information number has been
> operational since January 22, 2007 with live operators available
> to answer questions. As of June 11, 2007, the toll-free line has
> logged a total of 539 minutes of use; (Id.)

> (c) the settlement website has been operational since January
> 22, 2007. As of June 11, 2007, the website has registered a
> total of 447 visitor sessions; (Id.)

> (d) direct mailings of Notice materials were made to
> approximately 829 households, 112 emergency responders, and
> 97 attorneys; (Id.)

> (e) since January 18, 2007, Class Counsel has been assisting
> hundreds of members of the putative Class at the Class
> Settlement Claims Office. As of June 1, 2007, Class Counsel
> has dedicated 1,422.75 hours of attorney time and 2,643.50
> hours of support staff time in operating the claims center which
> includes, *inter alia*, assisting putative Class members with
> questions about the proposed settlement and with filling out
> claim forms. (Solomon Aff., Ex. E)

In sum, the Notice and notice plan as carried out satisfy due process and

are not only the best practicable, but are and have been comprehensive and far-reaching.

By any measure they have met and exceeded all the requirements of due process and

Rule 23.

## CONCLUSION

For the foregoing reasons, the Court should finally approve the Proposed Settlement as fair, adequate and reasonable and enter Judgment accordingly.

DATED:  June 19, 2007

Respectfully submitted,

**PLAINTIFFS AND ALL CLASS
COUNSEL IDENTIFIED ON THE
ATTACHED EXHIBIT:**

By /s/ Frederick J. Jekel        date 6/19/07        By  /s/ Terry E. Richardson date 6/19/07

Joseph F. Rice, Esq.                                Terry E. Richardson, Esq.
Frederick J. Jekel, Esq.
Motley Rice, LLC                                    Richardson, Patrick, Westbrook
                                                    and Brickman, LLC

**Co-Lead Class Counsel**                           **Co-Lead Class Counsel**


**DEFENDANT:**

**Norfolk Southern Railway Company**

By  /s/ Daniel B. White        date 6/19/07

Daniel B. White, Esq.
Gallivan, White & Boyd, P.A.

Richard  H. Willis, Esq.
Nelson, Mullins, et al. LLP

Sheila L. Birnbaum, Esq.
Skadden, Arps, Slate, Meagher & Flom
LLP

**Counsel for Defendant**

27

## **Exhibits**

Exhibit A                               Class Definitions and Exclusions

Exhibit B                               Affidavit of Sherriff Mike Hunt

Exhibit C                               Affidavit of Joseph F. Rice, Esq.

Exhibit D                               Affidavit of Cameron Azari

Exhibit E                               Affidavit of Carl L. Solomon

Exhibit F                               List of class counsel

Exhibit G                               Affidavit of Steven M. Koenig, M.D.

Exhibit H                               Affidavit of Alan R. Leff, M.D.

Exhibit I                                Affidavit of Jay Gandy, Ph.D.

Exhibit J                               Affidavit of Phillip Witorsch, M.D.

Exhibit K                               Affidavit of James A. Barker, M.D.

Exhibit L                               Affidavit of Lawrence H. Bergmann, Ph.D.

Exhibit M                              Report of Georgina Riley

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT was served in accordance with the federal electronic filing rules this 19th day of June, 2007 to all attorneys of record.

/Frederick J. Jekel
Frederick J. Jekel