IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| IN RE GRANITEVILLE TRAIN DERAILMENT ) | C/A No. 1:06-3597-MBS |
| _____ ) | |
| Sara Olvera, Abner Johnson, ) | |
| Lillian D. Witt, Marion Williams, and ) | |
| Phillis Williams, Individually and on ) | |
| behalf of all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| Norfolk Southern Railway Company, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**ORDER GRANTING NORFOLK SOUTHERN RAILWAY COMPANY'S
NOTICE OF MOTION AND MOTION FOR AN ORDER TO SHOW CAUSE
AND FOR PRELIMINARY AND PERMANENT INJUNCTION
AS TO MALEAH BUSBEE**

This matter came before the Court on the motion of Defendant Norfolk Southern Railway Company (hereinafter "Defendant") for an Order to Show Cause, Preliminary and Permanent Injunction pursuant to the All-Writs Act and Federal Rule of Civil Procedure 65 as to Plaintiff Maleah Busbee (hereinafter "Plaintiff"). Defendant's motion, which was filed August 22, 2011, seeks an injunction prohibiting Plaintiff from pursuing her state court action, entitled "Maleah Busbee v. Norfolk Southern Corporation, Norfolk Southern Railway Company, Mike Ford, Benjamin Aiken, and James Thornton," C.A. No. 2008-CP-02-99 (hereinafter "South Carolina action" or "state court action") arising out of the January 6, 2005 Graniteville train derailment. Defendant also requests an award of costs and fees related to the filing and prosecuting of its motion. Plaintiff filed a Response on September 22, 2011, to which Defendant filed a Reply on September

29, 2011. A hearing was held on November 7, 2011. The Court has heard argument, reviewed the motion, memoranda, exhibits, and applicable law and concludes that Defendant's motion should be granted and that Defendant is entitled to an award of its costs and attorney's fees incurred in filing and prosecuting the motion.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court approved a class action settlement arising out of the Graniteville derailment pursuant to a Final Order and Judgment dated June 25, 2007 in *Olvera, et al. v. Norfolk Southern Railway Company*, C.A. No. 1:06-cv-3597-MBS (Entry 85) (hereinafter "*Olvera* Final Order and Judgment" or "Order"). That class settlement released all claims against Defendant of all persons who received Medical Treatment following the derailment, provided that such persons did not timely and validly opt out of the class settlement. This Court retained "continuing jurisdiction over the case . . . the Class Members, the Class Representatives, and NSRC [Defendant]." *See* Order ¶ 18.

Class Members were members of one or more distinct subclasses for purposes of settlement. Members of Subclass 1 included:

> All persons physically present in Evacuation Zone A on January 6, 2005 after the Time of Derailment due to being present in their or a family member's residence or their place of employment and who received Medical Treatment from a licensed physician or licensed health care provider on or before February 1, 2005 for an objective manifested physical injury caused by chlorine exposure from the Incident and who (1) **validly opted out of the Preceding Class or Preceding Subclass 3 [of the class action settlement in *Curtis v. Norfolk Southern Railway Co.*, C.A. No. 1:05-cv-115-MBS],** and/or (2) were not otherwise covered by the definition of the Preceding Subclass 3 and did not opt-in to the Preceding Subclass 3.

Order ¶ 3.

Defendant seeks an injunction prohibiting Plaintiff from continuing with her claims in state court for personal injuries, as these claims are covered by Subclass 1 of the class settlement.

Plaintiff denies that she is a member of Subclass 1 and that her claims are encompassed with Subclass 1. It is Plaintiff's burden to prove that she properly opted-out of the class settlement. *In re Managed Care Litig.*, No. 03-21296-CIV, 2008 WL2944897, at *4 (S.D. Fla. July 24, 2008) (citing *In re WorldCom, Inc., Securities Litig.*, 2005 WL1048073 at *4 (S.D.N.Y. May 5, 2005)).

Plaintiff first contends that, since she validly opted out of the . . . Preceding Subclass 3," she does not meet the definition of Subclass 1 of the *Olvera* class action settlement. The court disagrees.

The *Curtis* class action settlement defined Subclass 3 as

> All natural persons, including minors and adults, who resided or worked in and were physically located within, the geographical boundaries of Evacuation Zone A . . . or Evacuation Zone B . . . any time during the period from the Time of Derailment (as defined below) to two (2) hours thereafter, and who did not receive Medical Treatment . . . from a licensed physician, or a licensed health care provider at a hospital emergency room, for an objective manifested physical injury due to exposure to chlorine from the Incident within 72 hours of the Time of Derailment . . . .

There is no dispute that Plaintiff was present in Evacuation Zone A at the time of the derailment. Plaintiff also sought Medical Treatment on January 18, 2005 and January 21, 2005, more than 72 hours from the time of the Derailment. Thus, Plaintiff fell within the putative *Curtis* class. However, Plaintiff validly opted out of Subclass 3. Therefore she was not a member of Subclass 3 of the *Curtis* class.

Subclass 1 of the *Olvera* class settlement encompasses persons who, like Plaintiff, (1) were present in Evacuation Zone A at the time of the derailment; (2) received Medical Treatment prior to February 2, 2005; and (3) validly opted out of the *Curtis* Subclass 3. Under the plain language of Subclass 1 of the *Olvera* class settlement, Plaintiff fell within the putative class. Plaintiff did not opt out of Subclass 1. Therefore, Plaintiff is bound by the *Olvera* class settlement.

Plaintiff argues in the alternative that she is not encompassed within the *Olvera* Subclass 3

3

because she did not receive Medical Treatment on or before February 1, 2005. Plaintiff concedes that she was examined by medical professionals on January 18, 2005 and January 21, 2005. However, Plaintiff contends that, at most, she received only diagnostic work and diagnostic work is specifically excluded from the definition of "Medical Treatment" in the definitions section of the *Olvera* class settlement. The court is not persuaded.

First, a review of the medical records reveals that Plaintiff presented to the Aiken Regional Medical Center on January 18, 2005 and January 21, 2005, complaining of symptoms consistent with chlorine exposure, including coughing, nausea, and vomiting. Second, the *Olvera* Protocol included a provision creating a presumption that a claimant's condition was caused by chlorine exposure if the claimant was treated on or before January 20, 2005. Plaintiff has not rebutted this presumption. Third, Plaintiff was prescribed medication for treatment of respiratory symptoms, coughing, runny nose, and nausea, which symptoms, as noted hereinabove, are consistent with exposure to chlorine. Finally, Plaintiff's answers to interrogatories in the state court action provide that a designated representative from the Aiken Regional Medical Center "is expected to testify as to any treatment rendered to the Plaintiff as a result of chlorine exposure. The Plaintiff was treated on January 18, 2005." ECF No. 358-2, 3. The answers to interrogatories further provide that Plaintiff seeks damages of "[a]pproximately $2800.00 for her emergency department visit of January 18, 2005; [and a]pproximately $8,700.00 for treatment of vomiting, nausea and diarrhea and worsening of diverticulitis following exposure." ECF No. 358-2, 6. Plaintiff's contention is without merit.

At the hearing, Plaintiff raised an issue of notice, asserting that Defendant failed to take proper steps to inform her of her rights under the *Olvera* class action settlement. As an initial matter, the court notes that it found proper notice had been disseminated to putative class members in the

4

*Olvera* action. See Final Order and Judgment Certifying the Class for Purposes of Settlement, Approving of Class Action Settlement, and Dismissing the Action with Prejudice, ECF No. 85, ¶ 10. Further, the Court notes that Plaintiff was represented by retained counsel during both the pendency of the *Curtis* and *Olvera* actions. Nevertheless, the court instructed counsel for Defendant to obtain proof of service on Plaintiff. On November 22, 2011, Defendant produced to the court an affidavit of Cameron R. Azari, Noticing Director for Epiq Class Action and Claims Solutions ("Epiq"), the corporate entity that disseminated notice to putative members of the *Olvera* class. Mr. Azari attests that notice was mailed via first class mail to Plaintiff at her address in Graniteville where she still resides. ECF No. 363-1, ¶ 6. Plaintiff does not refute Mr. Azari's affidavit.

The Court finds that Plaintiff was a member of Subclass 1 of the *Olvera* class. Plaintiff therefore is bound by the class settlement. *See Scardelletti v. Rinckwitz*, 68 F. App'x 472, 478 (4th Cir. 2003) (noting that nonnamed class members are parties bound by a class settlement). Plaintiff filed her state court action on January 7, 2008, seeking the same damages she released by virtue of her membership in the *Olvera* class settlement. Under the terms of the *Olvera* Final Order and Judgment, the claims of each member were released and dismissed *with prejudice.* ECF No. 85, ¶ 16. In addition, all members of the class:

> [were] forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against [Defendant] with respect to the Released Claims and [did] forever discharge and hold harmless [Defendant] of and from any and all Released Claims which the Class Member has or may hereafter have.

ECF No. 85, ¶ 17.

The All-Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law." 28 U.S.C. § 165 1(a) (2008).  The Fourth Circuit has held that a court may, pursuant to the All-Writs Act, enjoin the prosecution of actions barred by a previous class settlement.  *Scardelletti v. Rinckwitz*, 68 F. App'x 472 (4th Cir. 2003); *see also In re American Honda Motor Co., Inc. Dealerships Relations Litig.*, 315 F.3d 417 (4th Cir. 2003).

Because Plaintiff is an *Olvera* class member who did not validly opt out of the class action settlement, Plaintiff's state court action is in violation of the *Olvera* Final Order.  The Court finds and concludes that it is empowered under the All-Writs Act to enjoin Plaintiff from prosecuting the state court action.  Therefore, under the terms of the Final Order and pursuant to the All-Writs Act, the Court permanently enjoins Plaintiff from pursuing any and all of her claims previously released pursuant to the *Olvera* class settlement.

Finally, the Court finds and concludes that, under the Settlement Agreement, members of the *Olvera* class agreed to fully indemnify Defendant for the claims they released in its favor.  ECF No. 8-1, ¶¶ 5.3, 9.2.  The class members also agreed that if they filed an action seeking to recover under any of the Released Claims, that action would be dismissed with prejudice at their cost. *Id.* The Court finds that Plaintiff's state court action seeks to recover for the same claims which she released as an *Olvera* class member.  Therefore, Defendant is awarded its costs and fees related to the filing and prosecuting of its motion. Defendant shall file a motion and affidavit supporting its fee request within 14 days of the date of this Order, in accordance with Fed. R. Civ. P. 54(d) and Local Civil Rule 54.02, D.S.C. for the Court's consideration.

## CONCLUSION

For the reasons stated, Defendant's motion for an Order to Show Cause, Preliminary and Permanent Injunction (ECF No. 354), as well as its request for costs and attorneys' fees related to

the filing and prosecuting of the motion, are **granted**.

    **IT IS SO ORDERED**.

                                            /s/ Margaret B. Seymour
                                            Chief United States District Judge

Columbia, South Carolina

January 21, 2011.